■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BYRON SHELTON, Appellant. [763 NYS2d 79] —Appeal by the defendant from a judgment of the Supreme Court, Queens County (Buchter, J.), rendered January 23, 2001, convicting him of rape in the first degree and sexual abuse in the first degree (two counts), upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

The defendant was convicted of raping and sexually abusing an 81-year-old woman. At trial the complainant testified that she was acquainted with the defendant because he had previously been employed as a maintenance worker in her apartment building. The defendant also had a business washing windows for building residents, and in April 1999, the complainant agreed to hire the defendant to wash the windows in her apartment. On the evening of April 22, 1999, the defendant met the complainant in the elevator of her building, and suggested accompanying her to her apartment so that he could take a look at the windows. Once inside the apartment, the defendant pushed the complainant down the hallway into her bedroom, threw her to the bed, and raped her. Although the complainant struggled to get free, she could not move because the defendant was holding her down. Before leaving the complainant's apartment, the defendant told her not to tell anyone about what had happened. However, on the following day, the complainant told her daughter that she had been raped, and her daughter instructed her to call the police. DNA testing revealed that semen found on a bedspread and sheets recovered from the complainant's apartment matched the defendant's DNA.

Although the defendant took the witness stand and admitted that he had attempted to engage in sexual intercourse with the defendant, he claimed that she had seduced him, and that they did not have intercourse because he could not get an erection. The defendant also asserted that the complainant had threatened to call the police if he did not return to her apartment on the following day to engage in further sexual activity.

On appeal, the defendant contends that the prosecution

failed to establish the "forcible compulsion" elements of rape in the first degree and sexual abuse in the first degree beyond a reasonable doubt. However, viewing the evidence in the light most favorable to the prosecution (*see People v Contes,* 60 NY2d 620 [1983]), we find that it was legally sufficient to prove that the defendant used forcible compulsion to engage in sexual intercourse and sexual contact with the complainant, who was five feet tall and weighed between 90 and 95 pounds, and who testified that the defendant physically restrained her as she struggled to free herself (*see People v Brown,* 302 AD2d 403 [2003], *lv denied* 99 NY2d 653 [2003]; *People v Ferrer,* 209 AD2d 714 [1994]; *People v Hodges,* 204 AD2d 739 [1994]; *People v Szarka,* 163 AD2d 758 [1990]). Moreover, while the defendant argues that the jury should have rejected the complainant's testimony as fabricated because there was no medical evidence that she suffered any physical injuries, resolution of questions of credibility, as well as the weight to be accorded to the evidence presented, are primarily questions to be resolved by the jury which saw and heard the witnesses (*see People v Gaimari,* 176 NY 84, 94 [1903]). Its determination should be accorded great weight on appeal and should not be disturbed unless clearly unsupported by the record (*see People v Garafolo,* 44 AD2d 86, 88 [1974]). Upon the exercise of our factual review power, we are satisfied that the verdict of guilt was not against the weight of the evidence (*see* CPL 470.15 [5]; *see also People v Williams,* 259 AD2d 509 [1999]).

We also reject the defendant's contention that the Supreme Court erred in admitting certain testimony into evidence. The complainant's testimony that she disclosed the rape to her daughter less than 24 hours after it had taken place was properly admitted under the prompt outcry exception to the hearsay rule since, under the circumstances of this case, the report was made at "the first suitable opportunity" (*People v McDaniel,* 81 NY2d 10, 17 [1993] [internal quotation marks omitted]; *see People v O'Sullivan,* 104 NY 481, 486 [1887]; *see also People v Williams,* 303 AD2d 608 [2003]; *People v Rawlinson,* 280 AD2d 943 [2001]; *People v Aguirre,* 262 AD2d 175 [1999]; *People v Fabian,* 213 AD2d 298 [1995]). Furthermore, the Supreme Court properly permitted an emergency room physician to testify that the lack of physical trauma was not inconsistent with the occurrence of rape (*see People v Paun,* 269 AD2d 546 [2000]; *People v Houston,* 250 AD2d 535 [1998]; *People v Harris,* 249 AD2d 775 [1998]).

Furthermore, we disagree with our dissenting colleague's position that reversal is required because the prosecutor made

inflammatory and prejudicial comments during his summation. The defendant's claim that the challenged comments constituted reversible error is unpreserved for appellate review because the defendant failed to make specific and timely objections (*see* CPL 470.05 [2]; *People v Williams*, 303 AD2d 772 [2003]; *People v Joseph*, 298 AD2d 601 [2002]), did not seek further ameliorative action after certain objections were sustained (*see People v Medina*, 53 NY2d 951; *People v Joseph, supra; People v Woods*, 296 AD2d 430 [2002]), and moved only belatedly for a mistrial (*see People v McHarris*, 297 AD2d 824 [2002]). Moreover, we do not agree that the challenged comments so prejudiced the defendant as to warrant reversal in the interest of justice. Here, the theory of the defense was, in essence, that the complainant attempted to seduce the defendant, became angry with him when he could not perform, and accused him of rape when he failed to return to her apartment to engage in further sexual activity. Furthermore, during the course of her summation, defense counsel argued that the complainant was making up her testimony as she went along, compared the situation presented to a movie in which an older woman had a relationship with a younger man, and stressed that the complainant, who suffered a stroke prior to the trial, was in better physical condition at the time of the offense. The allegedly improper statements made by the prosecutor were, for the most part, a fair response to defense counsel's closing argument, or fair comment on the evidence, and did not exceed the wide bounds of rhetorical argument comment permitted in closing arguments (*see People v Halm*, 81 NY2d 819, 821 [1993]; *People v Galloway*, 54 NY2d 396 [1981]; *People v Mendoza*, 304 AD2d 774 [2003]; *People v Gonzales,* 296 AD2d 580 [2002]). While we agree that some of the prosecutor's remarks would have been better left unsaid, these comments were not so pervasive as to warrant reversal (*see People v Curry*, 287 AD2d 385 [2001]; *People v Tucker*, 281 AD2d 439 [2001]), and were harmless under the circumstances of this case (*see People v Tucker, supra; People v Ellis*, 247 AD2d 404 [1998]; *People v LoRusso*, 245 AD2d 306 [1997]; *People v Moore*, 226 AD2d 745 [1996]).

Finally, the sentence imposed was not excessive (*see People v Suitte*, 90 AD2d 80 [1982]). Altman, J.P., Krausman and Cozier, JJ., concur.

McGinity, J., dissents and votes to reverse the judgment appealed from, on the law and as a matter of discretion in the interest of justice, and order a new trial with the following memorandum: The dispositive issue in this case is whether the

prosecutor's remarks during summation effectively deprived the defendant of his right to a fair trial. I conclude that they did and would reverse the judgment of conviction and order a new trial.

The complainant is a widowed octogenarian. On the evening of April 22, 1999, the complainant encountered the defendant in her apartment building where he had been a maintenance man for about 10 years. She recognized him. That night, the defendant accompanied the complainant to her apartment as he was planning to wash her windows and wanted to look at them. Once in the apartment, the complainant testified that the defendant pushed her down the hallway into the bedroom, threw her on the bed and forcibly engaged in intercourse with her. On the evening of the following day, the complainant told her daughter that she had been raped and called the police. Subsequently, the complainant was taken to a hospital where an internal examination was performed and a rape kit prepared. The rape kit and examining notes, however, were lost. Extant medical records did not demonstrate overt signs of trauma.

The defendant, who learned four days later that the police were looking for him for the rape of the complainant, turned himself in to authorities. The defendant acknowledged that he accompanied the complainant to her apartment on the date in question but stated that any sexual activities they engaged in were of a consensual nature. The defendant denied that he raped or sexually abused the complainant. The defendant was subsequently indicted and charged with one count of rape in the first degree and four counts of sexual abuse in the first degree.

During trial, the complainant testified that the defendant forcibly engaged in intercourse with her. The defendant presented a consent defense, testifying that the complainant initiated sex. The defendant stated that they engaged in some sexual activity but that he was unable to complete intercourse.

During the People's summation, the prosecutor contended that it was unthinkable that the complainant would have prompted the defendant to engage in sex and made repeated inappropriate comments ascribing to the defense certain descriptions of the complainant.

The jury ultimately found the defendant guilty of rape in the first degree and two counts of sexual abuse in the first degree after three days of deliberation.

In my view, the prosecutor's remarks during summation deprived the defendant of his right to a fair trial. He stated at

various times, for example, that the defense was characterizing the complainant as a "seductress," "vixen," "nymphomaniac," "vindictive," "sex demanding manipulative vindictive woman," "vindictive bitch grandma evil," "real hottie," and "that crazy." He also ascribed to the defense a comparison between the complainant and the vindictive character portrayed by the actress Glenn Close in the film "Fatal Attraction." These repeated references served only to inflame passions against the defendant and to improperly denigrate the consent defense. Such prejudicial conduct on the part of the prosecution deprived the defendant of a fair trial (*see People v Ni*, 293 AD2d 552 [2002]; *People v Smith*, 288 AD2d 496 [2001]; *People v Robinson*, 260 AD2d 508 [1999]; *People v Moss*, 215 AD2d 594 [1995]). These references cannot be deemed as acceptable responses to defense arguments (*cf. People v Mejias,* 296 AD2d 583 [2002]). To the extent that some of these claims of misconduct are unpreserved for appellate review, they, nevertheless should be reviewed in the exercise of our interest of justice jurisdiction (*cf. People v Moss, supra*). Nor did the court's curative instructions eliminate the prejudicial effect of any misconduct (*cf. People v Galloway*, 54 NY2d 396 [1981]). A court's instruction to a jury to disregard matters improperly brought to their attention cannot "always assure elimination of the harm already occasioned" (*People v Calabria*, 94 NY2d 519, 523 [2000], quoting *People v Carborano*, 301 NY 39, 42-43 [1950]).

The prosecutorial misconduct is all the more egregious since proof of guilt was not overwhelming (*cf. People v Smith, supra; People v Robinson, supra*). The lack of prompt outcry, the absence of the rape kit and the examining doctor's notes, and the lack of physical injury to the complainant or overt sign of trauma militate against a conclusion that proof of guilt was overwhelming. Viewing the totality of the circumstances, the conduct of the prosecution deprived the defendant of a fair trial and a new trial should be ordered.