■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BOBBY STEARNS, Appellant. [898 NYS2d 348]—

Peters, J. Appeal from a judgment of the County Court of Warren County (Hall, Jr., J.), rendered March 4, 2009, upon a verdict convicting defendant of the crimes of rape in the first degree and assault in the third degree.

While defendant and his girlfriend (hereinafter the victim) were camping at a site in the Town of Warrensburg, Warren County, a verbal altercation ensued between the two and, when the victim attempted to leave, defendant grabbed her by the forearm and "backhanded" her across the jaw. The victim fell to the ground and was dragged by defendant to a tent where he allegedly forced her to have sexual intercourse. The following day, the victim reported the incident and, based on the victim's statements as well as a recorded conversation between the victim and defendant, defendant was arrested and subsequently indicted for rape in the first degree and assault in the third degree. Following a jury trial, he was convicted as charged and sentenced to an aggregate prison term of 12 years to be followed by 20 years of postrelease supervision. He now appeals.

Defendant contends that the verdict convicting him of rape in the first degree is contrary to the weight of the evidence because the victim's testimony was inconsistent and incredible and there was no objective evidence to corroborate her claim that a rape had occurred. Since a different verdict on this charge would not have been unreasonable, we must " 'weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony' " (*People v Bleakley*, 69 NY2d 490, 495 [1987], quoting *People ex rel. MacCracken v Miller*, 291 NY 55, 62 [1943]; *see People v Danielson*, 9 NY3d 342, 348 [2007]).

Here, the victim testified that, after striking her in the face,

defendant dragged her by her arm into their tent, got on top of her, pulled her shorts down and, against her protests, penetrated her vagina with his penis. Although she attempted to get defendant off of her, she was unable to because he was leaning into her and she lacked strength due to the injuries sustained from the physical altercation. According to the sexual assault nurse examiner who examined the victim, although there was no visible trauma to the victim's genital area, the victim withdrew in pain upon examination of her posterior forchette.[1] She ultimately concluded that her observations and findings of the examination were consistent with the victim's account of being sexually assaulted.

Contrary to defendant's contention, we do not find the victim's testimony to be inherently unbelievable and discern no basis upon which to disturb the jury's assessment of her credibility (see People v Nowinski, 36 AD3d 1082, 1084 [2007], lv denied 8 NY3d 989 [2007]; People v Weber, 25 AD3d 919, 921 [2006], lv denied 6 NY3d 839 [2006]). The various inconsistencies between the victim's testimony and her prior statements did not relate to the elements of the crime, were fully developed at trial and, ultimately, presented a credibility issue for the jury to resolve (see People v Scanlon, 52 AD3d 1035, 1039 [2008], lv denied 11 NY3d 741 [2008]; People v Weber, 25 AD3d at 921; People v Campbell, 17 AD3d 925, 926 [2005], lv denied 5 NY3d 760 [2005]). Viewing the evidence in a neutral light and according great deference to the jury's credibility determinations (see People v Romero, 7 NY3d 633, 643-644 [2006]; People v Lopez-Aguilar, 64 AD3d 1037, 1037 [2009]), we conclude that the verdict of guilty on this count was not against the weight of the evidence.

Defendant next asserts that his conviction for assault in the third degree was against the weight of the evidence, arguing that the credible evidence did not support a finding that the victim suffered a physical injury.[2] "Physical injury" is defined as an "impairment of physical condition or substantial pain" (Penal Law § 10.00 [9]). "[W]hile 'slight or trivial pain' is insufficient, the '[p]ain need not, however, be severe or intense to be substantial' " (People v Rivera, 42 AD3d 587, 588 [2007], lv denied 9 NY3d 880 [2007], quoting People v Chiddick, 8 NY3d

---

1. The nurse examiner explained that the posterior forchette is most often damaged during nonconsensual sex.

2. Although defendant also argues that the proof on this element was legally insufficient, his general motion to dismiss at trial was insufficient to preserve this issue for our review (see People v Finger, 95 NY2d 894, 895 [2000]; People v Hardy, 57 AD3d 1100, 1101 [2008], lv denied 12 NY3d 784 [2009]).

445, 447 [2007]; *see People v Foster*, 52 AD3d 957, 959 [2008], *lv denied* 11 NY3d 788 [2008]). "A variety of factors are relevant in determining whether physical injury has been established, including the injury viewed objectively, the victim's subjective description of the injury and [his or] her pain, and whether the victim sought medical treatment" (*People v Dixon*, 62 AD3d 1036, 1039 [2009] [internal quotation marks and citations omitted], *lv denied* 12 NY3d 912 [2009]; *see People v Chiddick*, 8 NY3d at 447).

The victim testified that defendant backhanded her across the jaw with such force that she fell to the ground, was "disoriented" and was thereafter unable to bring herself to her feet. She explained that her jaw "hurt really bad" and that she had trouble chewing for days after the incident. Upon seeking medical treatment at the hospital, she described the pain as a "7" on a scale of 1 to 10 and was advised to take pain medication. Furthermore, although an X ray of her jaw was unremarkable, medical personnel confirmed a contusion to her jaw. This evidence was sufficient to submit the issue of substantial pain to the jury and, under these circumstances, the jury's finding that the victim suffered a physical injury was not against the weight of the evidence (*see People v Chiddick*, 8 NY3d at 447-448; *People v Rojas*, 61 NY2d 726, 727-728 [1984]; *People v Rivera*, 42 AD3d at 589; *compare People v Cheeks*, 161 AD2d 657 [1990]).

Nor are we persuaded that defendant was denied the right to a public trial when County Court excluded defendant's sister from the courtroom until her nine-year-old son, who was a potential witness, had testified. "While the right to a public trial is fundamental, it is not absolute" (*People v Baker*, 58 AD3d 1069, 1070 [2009] [citations omitted]; *see People v Ramos*, 90 NY2d 490, 497 [1997], *cert denied* 522 US 1002 [1997]; *People v Kin Kan*, 78 NY2d 54, 57 [1991]). " 'It has uniformly been held to be subject to the inherent power of the court to preserve order and decorum in the courtroom, to protect the rights of parties and witnesses, and generally to further the administration of justice' " (*People v Hinton*, 31 NY2d 71, 74 [1972], *cert denied* 410 US 911 [1973], quoting *People v Jelke*, 308 NY 56, 63 [1954]). To that end, "the exclusion of a witness during the testimony of another concerning events or facts in dispute is sanctioned as a device to preserve the truth-seeking function by preventing one prospective witness from being taught by hearing another's testimony" (*People v Sayavong*, 83 NY2d 702, 708 [1994] [internal quotation marks and citation omitted]; *see e.g. Levine v Levine*, 56 NY2d 42, 49-50 [1982]; *People v Smith*, 111 AD2d 883, 883 [1985]).

Ultimately, the decision to exclude a spectator from the courtroom rests in the discretion of the trial court (*see People v Kin Kan*, 78 NY2d at 57; *People v Baker*, 58 AD3d at 1070). Here, defendant had listed his nine-year-old nephew, who was present at the campground at the time of the alleged criminal conduct, as a potential witness. The People expressed serious concerns that, given the child's young age, his mother had the ability and opportunity to influence and/or "coach" her son as to what to say after hearing the People's witnesses. County Court also expressed concern that her presence could implicate defendant's right to a fair trial by creating an avenue for the People to question the child as to whether his mother influenced his testimony and, as a result, raise such a suggestion to the jury. Given defendant's close relationship with his sister, her control over the young child witness, and the resulting opportunity for her to influence her son's potentially critical testimony on a disputed event, we cannot conclude that County Court abused its discretion in excluding the child witness's mother from the courtroom until her son was called as a witness. Under these particular circumstances, the mother's presence during the testimony of the People's witnesses "could have severely undermined the truth seeking function of the court, an overriding interest justifying the court's determination" (*People v Ming Li*, 91 NY2d 913, 917 [1998]).

Defendant's remaining contentions do not require extended discussion. The testimony of the victim's former boyfriend that the victim disclosed the rape to him the morning after it had occurred was properly admitted under the prompt outcry exception to the hearsay rule since the report was made at "the first suitable opportunity" (*People v Perkins*, 27 AD3d 890, 893 [2006], *lvs denied* 6 NY3d 897 [2006], 7 NY3d 761 [2006]; *see People v McDaniel*, 81 NY2d 10, 16 [1993]; *People v Shelton*, 307 AD2d 370, 371 [2003], *affd* 1 NY3d 614 [2004]). Although defendant now argues that this witness's testimony concerning the details of the rape exceeded the prompt outcry exception, this issue is unpreserved for our review inasmuch as he failed to object to the admissibility of this testimony and did not move to strike it or seek a limiting instruction (*see People v Shook*, 294 AD2d 710, 712 [2002], *lv denied* 98 NY2d 702 [2002]; *People v Pace*, 145 AD2d 834, 836 [1988], *lv denied* 73 NY2d 894 [1989]). Likewise, defendant failed to properly preserve for our review his assertion that certain testimony of a police investigator constituted inadmissible opinion testimony (*see* CPL 470.05 [2]; *People v Bolster*, 298 AD2d 705, 705 [2002], *lv denied* 99 NY2d 555 [2002]). We decline to exercise our interest of justice jurisdiction with respect to these unpreserved issues (*see* CPL 470.15 [3] [c]).

Finally, defendant's 12-year prison sentence was neither harsh nor excessive. Given the seriousness of his conduct, his lengthy criminal history—which includes three assault convictions—and the fact that the crimes for which he was convicted occurred while he was on probation, we find neither an abuse of discretion nor extraordinary circumstances warranting modification of that sentence (*see People v Lerario*, 50 AD3d 1396, 1396-1397 [2008], *lv denied* 10 NY3d 961 [2008]; *People v Love*, 307 AD2d 528, 533 [2003], *lv denied* 100 NY2d 643 [2003]). Moreover, we find no basis to modify County Court's imposition of the maximum period of postrelease supervision authorized by law (*see* Penal Law § 70.45 [2-a] [f]; *People v Witbeck*, 299 AD2d 726, 726 [2002], *lv denied* 99 NY2d 621 [2003]).

Cardona, P.J., Kavanagh, McCarthy and Egan Jr., JJ., concur. Ordered that the judgment is affirmed.

