People v Hackett (2018 NY Slip Op 08384)





People v Hackett


2018 NY Slip Op 08384


Decided on December 6, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 6, 2018

109685

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
KYLE J. HACKETT, Appellant.

Calendar Date: October 10, 2018

Before: Garry, P.J., Lynch, Devine, Aarons and Pritzker, JJ.


Mary Jane Murphy, Binghamton, for appellant.
Joseph A. McBride, District Attorney, Norwich (Marlene O. Tuczinski, New York Prosecutors Training Institute, Inc., Albany, of counsel), for respondent.



MEMORANDUM AND ORDER
Lynch, J.
Appeal from a judgment of the County Court of Chenango County (Revoir Jr., J.), rendered September 9, 2016, upon a verdict convicting defendant of the crimes of rape in the third degree, sexual abuse in the first degree and endangering the welfare of a child.
In July 2014, defendant was indicted for the crimes of rape in the first degree, sexual abuse in the first degree and endangering the welfare of a child after the victim reported that he raped her in the bathroom of her home while she was babysitting. At the end of the ensuing jury trial, County Court charged the jury with, as relevant here, the lesser included offense of rape in the third degree. Defendant was acquitted of rape in the first degree but convicted of rape in the third degree, sexual abuse in the first degree and endangering the welfare of a child. County Court sentenced defendant to an aggregate prison term of five years, followed by five years of postrelease supervision. Defendant now appeals.
Initially, defendant's unspecified claim on appeal that the verdict was legally insufficient was not preserved by the general motion to dismiss made at the close of the People's proof (see People v Hawkins, 11 NY3d 484, 492 [2008]; People v Secor, 162 AD3d 1411, 1412 [2018], lv denied 32 NY3d 941 [2018]). However, as part of our weight of the evidence review, "we necessarily consider whether all of the elements of the charged crimes were proven beyond a reasonable doubt" (People v Planty, 155 AD3d 1130, 1131 [2017] [internal quotation marks and citation omitted], lv denied 30 NY3d 1118 [2018]; see People v Danielson, 9 NY3d 342, 348-349 [2007]). This review is a "two-step approach" that requires us to first "determine whether, based on all of the credible evidence, an acquittal would not have been unreasonable"; if so, we then "weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (People v Sanchez, ___ NY3d ___, ___ 2018 NY Slip Op 06052, *1 [2018] [internal quotation marks and citations omitted]; see People v Cole, 162 AD3d 1219, 1223 [2018], lv denied 32 NY3d 1002 [2018]). If, after we weigh the testimony, "it appears that the trier of fact has failed to give the evidence the weight it [*2]should be accorded, then [we] may set aside the verdict" (People v Bleakley, 69 NY2d 490, 495 [1987]). Where our review reveals credibility disputes, we accord "[g]reat deference . . . to the fact-finder's opportunity to view the witnesses, hear the testimony and observe demeanor" (People v Romero, 7 NY3d 633, 644 [2006] [internal quotation marks and citation omitted]; see People v Hartle, 159 AD3d 1149, 1153 [2018], lv denied 31 NY3d 1082 [2018]).
As relevant here, the People had to establish that defendant "engage[d] in sexual intercourse with [the victim] without [the victim's] consent where such lack of consent [was] by reason of some factor other than incapacity to consent" (Penal Law § 130.25 [3]), "subject[ed the victim] to sexual contact . . . [b]y forcible compulsion" (Penal Law § 130.65 [1]) and "knowingly act[ed] in a manner likely to be injurious to the physical, mental or moral welfare of a child less than [17] years old" (Penal Law § 260.10 [1]). Defendant does not deny that he engaged in sexual intercourse with the victim or that he subjected her to sexual contact. Rather, he contends that the event was consensual and the verdict was against the weight of the evidence because the victim was not credible and because the evidence did not establish forcible compulsion. We are not persuaded.
The victim testified that on an afternoon in June 2014, when she was 17 years old, she was at her home babysitting her two younger sisters and a family friend when defendant unexpectedly arrived. The victim knew defendant, who was 29 years old at the time, as a family friend. Both the victim and her sister, who was 15 years old at the time, testified that the defendant was "play fighting" with the group and then sat next to the victim on the couch, poking her and "fooling" and "joking around." The victim testified that she was uncomfortable with defendant's attention, so she moved to another couch, but defendant followed her and sat next to her again. The victim's sister attempted to untie the victim's bathing suit top, believing it to be funny, and defendant took the victim's wrist, twisted it behind her back and pushed her into a nearby bathroom. Once inside, defendant locked the door and told the victim that they had "unfinished business." The victim proceeded to detail how defendant restrained her, told her to stop "pretending that [she didn't] like it," forcibly touched her and had sexual intercourse with her as she resisted, kicked and repeatedly asked him to stop and to open the door to let her out.
Consistent with the victim's testimony, the victim's sister testified that once she discovered the victim and defendant in the bathroom, she tried to open the door, but it was locked. As she tried to gain entry into the bathroom, she could hear the victim saying, "Open the door, open the door, you need to stop." The victim's sister recalled that the victim sounded upset. Eventually, she was able to pick open the lock to the door, but defendant pushed the door back with his foot. The victim's sister recalled that when defendant stepped aside and she was finally able to get into the bathroom, the victim's shorts were pushed down around her knees and she looked "like she had been hurt and she was upset."
The victim's former boyfriend testified that the victim texted him that defendant had just raped her and he contacted the victim's mother. The victim's mother testified that she left work and returned home to find the victim crying, shaking and not able to talk. She took the victim to the hospital, where she was seen by a sexual assault nurse examiner (hereinafter SANE). During her testimony, the SANE detailed the procedure that she followed when she examined the victim. Further, the SANE testified that during her examination, she discovered certain injuries that were indicative of trauma that could have been caused by "[u]nwanted force."
Although a different verdict would not have been unreasonable, upon our review of the trial testimony and evidence, we find that the jury's verdict was not against the weight of the evidence. Insofar as it is relevant to the charge of rape in the third degree, "[l]ack of consent" can result from "[f]orcible compulsion" (Penal Law § 130.05 [2] [a]) or where "the victim clearly expressed that he or she did not consent to engage in such act, and a reasonable person in the actor's situation would have understood such person's words and acts as an expression of lack of consent to such act under all the circumstances" (Penal Law § 130.05 [2] [d]). As for sexual abuse in the first degree, a finding of "[f]orcible compulsion" is warranted where the evidence shows that sexual contact was "compel[led] by . . . use of physical force" (Penal Law § 130.00 [*3][8] [a]). Defendant's focus on the limited evidence with regard to bruising is misplaced, because "forcible compulsion is not synonymous with violence" (People v Luckette, 126 AD3d 1044, 1046 [2015] [internal quotation marks and citation omitted], lv denied 26 NY3d 1110 [2016]), and "for a sex offense to be predicated on forcible compulsion neither physical injury nor screaming or crying out is required" (People v Hartle, 159 AD3d at 1152 [internal quotation marks and citations omitted]). To the extent that defendant claims that the victim's testimony was inconsistent, this was fully explored at trial and presented a credibility issue for the jury (see People v Stearns, 72 AD3d 1214, 1216 [2010], lv denied 15 NY3d 778 [2010]). Upon our review of the record, and according deference to the jury's determination to credit the testimony given by the victim and her sister, we find no basis to set aside the verdict (see People v Hartle, 159 AD3d at 1152; People v Newkirk, 75 AD3d 853, 855 [2010], lv denied 16 NY3d 834 [2011]).
Defendant also argues that County Court should not have allowed the victim's mother and former boyfriend to testify that the victim told them that defendant raped her. Although, "[a] witness'[s] trial testimony ordinarily may not be bolstered with pretrial statements," there is an exception for "prompt outcry" evidence, which is "evidence that a victim of sexual assault promptly complained about the incident" (People v McDaniel, 81 NY2d 10, 16 [1993]; see People v Rosario, 17 NY3d 501, 512 [2011]). A prompt outcry "is admissible to corroborate the allegation that an assault took place" (People v McDaniel, 81 NY2d at 16), as long as it is "made at the first suitable opportunity" (id. at 17 [internal quotation marks and citation omitted]; see People v Gross, 26 NY3d 689, 694-695 [2016]).
We find that the victim's statements to her former boyfriend immediately after the incident and to her mother shortly thereafter were timely and therefore properly admitted as prompt outcry evidence (see People v Cridelle, 112 AD3d 1141, 1143-1144 [2013]; People v Shepherd, 83 AD3d 1298, 1300 [2011], lv denied 17 NY3d 809 [2011]; People v Stearns, 72 AD3d at 1218)[FN1]. Although defendant's argument with regard to the SANE's testimony was not preserved, if it were, her testimony detailing the victim's description of what happened was admissible as an exception to the hearsay rule because it was "germane to diagnosis and treatment" (People v Spicola, 16 NY3d 441, 447 [2011], cert denied 565 US 942 [2011]). Moreover, the SANE's independent observation of the victim's demeanor was not hearsay (see People v Swamp, 84 NY2d 725, 731 [1995]) and, in any event, was also relevant to the victim's treatment (see People v Spicola, 16 NY3d at 451-452).
Next, defendant takes issue with County Court's response to two jury notes. In the first note, sent at 3:56 p.m., the jury asked for clarification about the definition of force as it applied to rape in the first degree. The prosecutor and defendant's counsel could not agree on how the question should be answered, and the jury had been told earlier in the day that it would be discharged by 4:15 p.m. at the latest. When the court called the jury into the courtroom shortly after 4:00 p.m., the jury delivered a second note. Prior to reading the second note, the court advised the jury that rather than rushing, the question posed in the first note would be answered the next day, and the court then released the jury. The second note advised that the jury was willing to continue deliberating past 4:15 p.m., but it was not addressed. Because defense counsel had notice of the contents of both notes and did not object to the court's response to either, defendant's arguments with regard to the notes were not preserved (see People v Ramirez, 15 NY3d 824, 825-826 [2010]). In any event, defendant was acquitted of the first degree rape charge, so he suffered no prejudice from the court's response, and there is no record basis to support a finding that the jury did not take its responsibilities seriously.
Finally, defendant claims that he was deprived of the effective assistance of counsel. In general, a defendant's constitutional right to effective representation is met "[s]o long as the evidence, the law, and the circumstances of a particular case, viewed in totality . . ., reveal that [*4]the attorney provided meaningful representation" (People v Baldi, 54 NY2d 137, 147 [1981]; see People v Richardson, 162 AD3d 1328, 1332 [2018]). Defendant's claims that counsel failed to communicate with him about a proposed plea, conduct a thorough investigation, devise an effective trial strategy, obtain relevant evidence and retain an expert and dissuaded him from testifying involve matters outside of the record and are therefore more properly the subject of a CPL article 440 motion (see People v Ash, 162 AD3d 1318, 1322-1323 [2018], lv denied 32 NY3d 1002 [2018]; People v Breault, 150 AD3d 1548, 1549 [2017]; People v Lewis, 143 AD3d 1183, 1185 [2016]). We do not agree that counsel was ineffective for not objecting to certain testimony by the SANE because, as set forth above, such an objection had "little or no chance of success" (People v Flowers, 28 NY3d 536, 541 [2016] [internal quotation marks and citations omitted]). Defendant also criticizes counsel's cross-examination of the victim, but does not "show the absence of strategic or other legitimate explanations for [this] strateg[y]" as is necessary to establish a claim of ineffective assistance (People v Wright, 160 AD3d 1110, 1112 [2018], lv denied 31 NY3d 1154 [2018]). In sum, and mindful that defendant was acquitted of the highest asserted charge, we find that defendant received meaningful representation (see People v Thiel, 134 AD3d 1237, 1240-1241 [2015], lv denied 27 NY3d 1156 [2016]).
Garry, P.J., Devine, Aarons and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: Defendant did not preserve his argument that the People failed to give adequate notice of their intention to elicit prompt outcry testimony.