People v May (2020 NY Slip Op 06316)





People v May


2020 NY Slip Op 06316


Decided on November 5, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 5, 2020

111200

[*1]The People of the State of New York, Respondent,
v
Nicholas A. May, Appellant.

Calendar Date: September 11, 2020

Before: Lynch, J.P., Clark, Devine, Pritzker and Reynolds Fitzgerald, JJ.


Theodore J. Stein, Woodstock, for appellant.
Michael A. Korchak, District Attorney, Binghamton (Rita M. Basile of counsel), for respondent.



Devine, J.
Appeal from a judgment of the County Court of Broome County (Cawley Jr., J.), rendered January 11, 2019, upon a verdict convicting defendant of the crimes of predatory sexual assault against a child and course of sexual conduct against a child in the second degree.
As the result of allegations that he sexually abused the underage victim over several years, defendant was charged in an indictment with predatory sexual assault against a child and course of sexual conduct against a child in the second degree. The matter proceeded to a jury trial that ended with defendant being found guilty as charged. County Court imposed concurrent sentences of 15 years to life in prison upon the predatory sexual assault conviction and seven years in prison, to be followed by 10 years of postrelease supervision, upon the course of sexual conduct conviction. Defendant appeals, and we affirm.
Initially, the verdict was supported by legally sufficient proof and was not against the weight of the evidence. The victim (born in 2007) was between the ages of 5 and 10 when she was allegedly abused by the adult defendant, with whom she lived, and their 2015 move from one residence to another served as the dividing line for the charges in the indictment.[FN1] Defendant was accused of committing course of sexual conduct against a child in the second degree by "engag[ing] in two or more acts of sexual conduct with" the victim over a period of three or more months while they lived at the first residence between April 2012 and the summer of 2015 (Penal Law § 130.80 [1] [a]; see Penal Law § 130.00 [2], [3], [10]), and thereafter committing predatory sexual assault against a child by subjecting the victim to acts constituting "course of sexual conduct against a child in the first degree" between the summer of 2015 and October 2017 (Penal Law § 130.96; see Penal Law § 130.75).
The only direct proof for those accusations came from the victim, who testified that defendant subjected her to dozens of instances of sexual conduct throughout their time at the first residence and further described how defendant consistently directed her to strip naked and then rubbed his penis against her vagina until he climaxed (see Penal Law § 130.00 [1], [3], [10]). The victim went on to relate how that specific abuse became less frequent over time but that, after they moved to the second residence, she performed oral sex on defendant several times and was digitally penetrated by him on at least one occasion (see Penal Law §§ 130.00 [2] [a]; 130.75 [1] [a]; 130.96). The People also presented expert testimony as to how the victim's unremarkable sexual assault examination was not unusual for child sexual abuse victims and how, in general, children who had been sexually abused could be expected to delay in disclosing it.
Defendant complains about the quality of the foregoing proof but, when viewed in the light most favorable to the People, it was legally sufficient for the jury to conclude that he had committed the charged offenses (see People v Horton, 173 AD3d 1338, 1339 [2019], lv denied 34 NY3d 933 [2019]; People v Kalina, 149 AD3d 1264, 1266 [2017], lv denied 29 NY3d 1092 [2017]). Moreover, although a different verdict would not have been unreasonable given the victim's potential knowledge of sexual activity from other sources, the lack of corroboration for her testimony and the indications that she may have had a motive to fabricate her claims, the jury credited the victim's account after those issues were explored at trial. We defer to that assessment of credibility and, viewing the evidence in a neutral light, find that the verdict is also supported by the weight of the evidence (see People v Shackelton, 177 AD3d 1163, 1165-1166 [2019], lv denied 34 NY3d 1162 [2020]; People v Horton, 173 AD3d at 1340).
Defendant next argues that County Court erred in allowing witnesses to provide expert testimony regarding the victim's normal sexual abuse examination and the existence of child sexual abuse accommodation syndrome. The admissibility and scope of expert testimony is addressed to the sound discretion of the trial court, which must assess whether the witness "possesses adequate skill, training, education, knowledge or experience" to proffer it (People v Munroe, 307 AD2d 588, 591 [2003], lv denied 100 NY2d 644 [2003]; see People v Andrade, 172 AD3d 1547, 1552-1553 [2019], lvs denied 34 NY3d 928, 937 [2019]). Here, the expert testimony regarding the examination came from the nurse practitioner who had conducted it and, given her training and experience in the area, County Court properly overruled defendant's objection and allowed her to state that an unremarkable sexual abuse examination was common in cases of child sexual abuse (see People v Ramirez, 126 AD3d 1012, 1012 [2015], lv denied 26 NY3d 1149 [2016]; People v Lashway, 112 AD3d 1222, 1224 [2013]; People v Shelton, 307 AD2d 370, 371 [2003], affd 1 NY3d 614 [2004]). Likewise, expert testimony is permissible to explain "why, in general, victims of child abuse delay reporting and why they might not report the full story with all of the details from the outset," and County Court providently allowed that testimony from a licensed clinical social worker who cited his clinical experience but made clear that he knew nothing about defendant's case and would not opine whether the victim had been abused (People v Werkheiser, 171 AD3d 1297, 1303 [2019], lv denied 33 NY3d 1109 [2019]; see People v Nicholson, 26 NY3d 813, 828 [2016]; People v Spicola, 16 NY3d 441, 465-466 [2011], cert denied 565 US 942 [2011]; People v Hughes, 114 AD3d 1021, 1024 [2014], lv denied 23 NY3d 1038 [2014]).
Finally, defendant contends that he received ineffective assistance of counsel in myriad respects. Defendant asserts that the count charging course of sexual conduct against a child in the second degree is a lesser included offense of the count charging predatory sexual assault against a child, and that trial counsel was ineffective in failing to address that point. This assertion is incorrect, however, because the two counts relate to different acts occurring in entirely distinct time periods (compare CPL 1.20 [37], with People v Beauharnois, 64 AD3d 996, 1001 n 5 [2009], lv denied 13 NY3d 834 [2009]). Any objection on that ground would have failed as a result, and "trial counsel cannot be ineffective for failing to advance an argument that has little or no chance of success" (People v Williams, 35 NY3d 24, 45 [2020]; see People v Caban, 5 NY3d 143, 152 [2005]).
Next, the record is silent as to why trial counsel did not retain an expert to rebut the testimony of the licensed clinical social worker, and defendant's argument that such constituted ineffective assistance "is not properly raised on direct appeal and would more appropriately be the subject of a CPL article 440 motion" (People v Perry, 154 AD3d 1168, 1171 [2017]). Defendant's remaining critiques of trial counsel's performance, such as counsel's decision to forgo a thorough exploration of the nurse practitioner's credentials and to allow the People some latitude before objecting to their leading questioning of the victim, overlook a valid strategy of avoiding tangential battles that would distract the jury from the key question of the victim's credibility. Trial counsel appears to have pursued that course — delicately cross-examining the young victim to draw out alternate explanations for her knowledge of sexual activity and raise suspicions of coaching and fabrication, then cross-examining the experts in a manner that called the value of their testimony into question and resulted in admissions that neither knew whether the victim's claims of abuse were true — and "defendant failed to show the absence of strategic or other legitimate explanations" for doing so (People v Wright, 160 AD3d 1110, 1112 [2018], lv denied 31 NY3d 1154 [2018]; see People v Hackett, 167 AD3d 1090, 1095 [2018]). Notwithstanding defendant's complaints, the record as a whole shows that trial counsel engaged in appropriate pretrial motion practice and advanced a cogent, if unsuccessful, trial strategy, and we are therefore satisfied that defendant received meaningful representation (see People v Hackett, 167 AD3d at 1095; People v Gokey, 134 AD3d 1246, 1246-1248 [2015], lv denied 27 NY3d 1069 [2016]).
Lynch, J.P., Clark, Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: The mother of the victim testified that the move to the second residence occurred in "the summer of 2013," but, in view of her further testimony regarding when they began living at the first residence, how long they lived there and how old the victim was when they left, it is evident that she misspoke and that the move occurred in 2015.