People v Baez (2024 NY Slip Op 05844)

People v Baez

2024 NY Slip Op 05844

Decided on November 21, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 21, 2024

112902
[*1]The People of the State of New York, Respondent,
v
Saul Baez, Appellant.

Calendar Date:October 9, 2024

Before:Garry, P.J., Reynolds Fitzgerald, Fisher, McShan and Powers, JJ.

Angela Kelley, East Greenbush, for appellant.
Brian P. Conaty, District Attorney, Monticello (Thomas W. Raleigh of counsel), for respondent.

Powers, J.
Appeal from a judgment of the Supreme Court (Stephan G. Schick, J.), rendered February 22, 2021 in Sullivan County, upon a verdict convicting defendant of the crime of course of sexual conduct against a child in the second degree.
In May 2019, defendant was charged by indictment with a single count of course of sexual conduct against a child in the second degree (see Penal Law § 130.80 [1] [b]) stemming from allegations that, on at least two occasions between January 1, 2017 and May 24, 2018, he had touched the victim's vagina, buttocks and breasts while she was under the age of 13 and defendant was over the age of 18. Prior to and during the course of trial, defendant made numerous requests for Rosario and Brady materials including, as is relevant here, notes of the assigned Social Services caseworker. However, the People denied the existence of such materials on the basis that they did not intend to call the caseworker as a witness and, as a result, maintained that the notes did not constitute either Rosario or Brady material. Based upon this assertion from the People, County Court (McGuire, J.) continually denied defendant's requests. Nevertheless, after summation but before final jury instructions, the People provided defendant with the sought-after caseworker notes. Upon the court's review thereof, it found, in part, that an assertion contained within the notes constituted Brady material that should have been disclosed to defendant. Yet, the court found that the provision of an adverse inference charge was the appropriate sanction and charged the jury accordingly. Defendant was convicted as charged and sentenced to a prison term of two years, to be followed by 10 years of postrelease supervision. Defendant appeals.
Defendant asserts that his conviction is not supported by legally sufficient evidence and that the verdict is against the weight of the evidence. Although defendant did move to dismiss at the close of the People's proof, arguing in general terms that there was no credible evidence establishing a prima facie case, this motion failed to specifically address the errors he now raises on appeal and, as a result, his legal sufficiency argument is not preserved for appellate review (see People v Hatch, 230 AD3d 908, 909 [3d Dept 2024], lv denied ___ NY3d ___ [Oct. 30, 2024]; People v Osman, 228 AD3d 1007, 1008 [3d Dept 2024]). "Nevertheless, our assessment of defendant's challenge to the weight of the evidence requires that we confirm whether the People proved each element beyond a reasonable doubt, and we do so while considering the evidence in a neutral light with deference to the jury's resolutions on witness credibility" (People v Tenace, 229 AD3d 908, 909 [3d Dept 2024] [internal quotation marks and citations omitted]; see People v Johnson, 225 AD3d 927, 929 [3d Dept 2024], lv denied 42 NY3d 927 [2024]).
"A person is guilty of course of sexual conduct against a child in the second degree when, over a period of time not less than three [*2]months in duration . . . he or she, being [18] years old or more, engages in two or more acts of sexual conduct with a child less than [13] years old" (Penal Law § 130.80 [1] [b]). At the relevant time, sexual conduct was defined as, among other things, sexual contact (see Penal Law § 130.00 [former (10)]), which includes, in relevant part, "touching of the sexual or other intimate parts of a person for the purpose of gratifying sexual desire of either party," including touching through clothing (Penal Law § 130.00 [3]).
Although a different verdict would not have been unreasonable here, our review of the record confirms that the verdict is not against the weight of the evidence. The victim testified that defendant began residing with her mother on a full-time basis starting in approximately August 2017 but, prior to this, had stayed on the weekends while working out of town. Although the victim was not able to put the events into a specific time frame, she described that, during this time, defendant would enter her bedroom "[m]ost days of the week" after her mother had left for work in the morning and touch her vagina and breasts with his hands over her clothing. The victim affirmed that these events continued for more than a few months.[FN1] The victim specifically testified that she altered her nighttime clothing by wearing tighter fitting clothing to deter defendant's advances after he had attempted to remove her bottoms, and that, during these events, she would wrap herself in blankets, kick and pretend to be asleep. The victim affirmed that she met with State Police following her original disclosure and, during this meeting, denied that any abuse was occurring. However, after spending the weekend with her father and disclosing the abuse to him and her stepmother, she met with State Police once again and reported the abuse. The victim was cross-examined extensively as to this prior inconsistent statement, and she explained that she did not disclose the abuse at that time or to her mother at an earlier time because she was fearful of the impact upon her mother's immigration status as well as to her younger sister.
The victim's mother testified generally to their living arrangements during the time in question and her work schedule, stating that she and defendant would leave for work together when they worked at the same business. However, it was not clarified in the record when this was. Richard Walter, a State Police investigator assigned to the Sullivan County Child Abuse Unit/Family Violence Response Team, testified that he initially met with the victim at her school, during which time she denied the abuse in question. However, during a subsequent meeting at his office days later, she confirmed that the abuse was occurring. During this second meeting, two controlled calls were placed to defendant, and, as a result thereof, defendant was interviewed and arrested at the culmination of this interview.
The recordings of the controlled calls and [*3]defendant's interview were admitted into evidence and published to the jury. During the first controlled call, the victim told defendant that she was scared and that he needed to promise her that he would not touch her any longer, to which defendant said, "I hear you." The victim then asked defendant why he does this, and defendant apologized stating, "If I do that, I am so sorry," and that sometimes he is "blackout" drunk.[FN2] During the interview, defendant explained that he resides with the victim, the victim's younger sister and the victim's mother. According to defendant, the mother departs the home for work before he does, as her shift starts between 6:00 a.m. and 6:30 a.m., whereas his begins between 7:00 a.m. and 7:30 a.m. Therefore, he confirmed that he is home alone with the victim for a period in the morning before she departs for school and he goes to work. Defendant reported that he and the mother have different employers, and that he had been unemployed for a time during the winter of 2017/2018. Defendant described the phone call that the victim had made to him the day before — the controlled call described above — in a way that was inconsistent with what was said during the call. In this respect, defendant recounted that the victim had called him and told him to stop touching her, to which he asked the victim what she was referring to but also stated that if he ever did that to her, he apologizes and he never did so intentionally. He made this assertion numerous times during this interview.[FN3]
We initially find that a different verdict would not have been unreasonable considering the inconsistencies in the victim's testimony, the mother's testimony that she and defendant left for work at the same time, the victim's knowledge of sexual abuse from other sources, a potential motive for fabrication and the lack of any corroborating physical evidence. However, the jury had the opportunity to consider each witness' testimony and found the victim to be credible despite these inconsistencies. Thus, viewing the evidence in a neutral light and deferring to the jury's credibility determinations, the verdict finding defendant guilty of course of sexual conduct against a child in the second degree is supported by the weight of the evidence (see People v Goff, 224 AD3d 1008, 1009 [3d Dept 2024]; People v May, 188 AD3d 1309, 1309-1310 [3d Dept 2020], lv denied 36 NY3d 974 [2020]; People v Thornton, 141 AD3d 936, 938 [3d Dept 2016], lv denied 28 NY3d 1151 [2017]).
However, we do agree that certain violations of the People's obligations pursuant to Brady v Maryland (373 US 83 [1963]) deprived defendant of a fair trial, necessitating reversal. "To establish a Brady violation, a defendant must show that the evidence is favorable to him or her because it is either exculpatory or impeaching in nature, the evidence was suppressed and prejudice arose because the suppressed evidence was material" (People v Dirschberger, 230 AD3d 876, 877 [3d Dept 2024] [citations [*4]omitted]; see People v Hoffman, 221 AD3d 1269, 1272 [3d Dept 2023], lv denied 41 NY3d 965 [2024]). "Where . . . the defendant made a specific request for the evidence in question, we must examine the trial record, evaluate the withheld evidence in the context of the entire record, and determine in light of that examination whether there is a reasonable possibility that the result of the trial would have been different if the evidence had been disclosed" (People v McGhee, 36 NY3d 1063, 1065 [2021] [internal quotation marks, brackets and citations omitted]; accord People v Hoffman, 221 AD3d at 1273; compare People v Ulett, 33 NY3d 512, 519 [2019]).
"What constitutes possession or control for Brady purposes has not been interpreted narrowly, and . . . the government's duty to disclose under Brady reaches beyond evidence in the prosecutor's actual possession" (People v Garrett, 23 NY3d 878, 886-887 [2014] [internal quotation marks and citations omitted]). Therefore, "to comply with Brady, the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case" because, "when police and other government agents investigate or provide information with the goal of prosecuting a defendant, they act as an arm of the prosecution, and the knowledge they gather may reasonably be imputed to the prosecutor under Brady" (id. at 887 [internal quotation marks and citations omitted]). "[W]hether knowledge of a government official or employee may be imputed to the People . . . turn[s] on whether participation in the criminal probe was an ancillary law enforcement task" and, thus, "while social workers are generally not agents of the police, in situations where they engage in a joint venture with police agencies to collaborate on child abuse or sexual abuse investigations, share information and a common purpose, and have a cooperative working arrangement with police, an agency relationship may exist such that the social workers' knowledge is imputed to the People" (People v Lewis, 167 AD3d 158, 161 [3d Dept 2018] [internal quotation marks, brackets and citations omitted], lv denied 33 NY3d 1033 [2019]; see People v Desjardins, 196 AD3d 1177, 1178 [4th Dept 2021]; People v Rodas, 145 AD3d 1452, 1453 [4th Dept 2016]).
At numerous times during trial, defendant requested what he constituted to be Brady and Rosario materials, specifically taking issue with the failure to provide, among other things, any written notes taken by the caseworker. The People continually argued that these notes did not constitute Rosario material because this caseworker was not being called to testify and, moreover, did not constitute Brady material because the People were not in possession of these notes. The People also asserted that there was no need to disclose the notes of the caseworker because a recording of the interview, wherein the caseworker can be seen taking notes, had been provided to defendant. As to this issue, County [*5]Court found that the caseworker was a member of law enforcement for the purposes of this trial because she was on a "multi-agency task force that incorporate[d] law enforcement," but that defendant was not entitled to her notes pursuant to Rosario because the People were not going to call her as a witness. Defendant reiterated his request for these notes after the People rested, and clarified that the request was for "the notes of any interviews or conversations with any of the People's witnesses," thereby including notes from interviews of defendant, the victim and the victim's mother. The People again asserted that because the recorded interview had been provided it was unnecessary to provide the notes.
County Court ordered the notes be disclosed, which the People provided to defendant and the court after summation but before final instructions were provided to the jury. Disclosure of the notes revealed, in part, a statement by the victim's mother expressing concern that the victim was acting normal and as if nothing happened, which the court indicated was probative and "border[ed] potentially on prejudicial." Thereafter, despite defendant's request for dismissal, the court found the provision of an adverse inference charge to be an appropriate remedy to what the court described as a Rosario violation.[FN4]
Here, under the first prong of Brady, the caseworker's notes constitute impeachment material as the information contained therein "may affect the credibility of a principal prosecution witness" — specifically, the victim — because the reliability of her testimony was determinative of defendant's guilt (People v Giuca, 33 NY3d 462, 473 [2019]; see People v Dirschberger, 230 AD3d at 878; People v Hoffman, 221 AD3d at 1275). Under the second prong, while not directly in the possession of the prosecution, these materials were in the possession of the caseworker who took an active role in the investigation and, therefore, what is within her possession may appropriately be imputed upon the People (see People v Garrett, 23 NY3d at 887; compare People v Lewis, 167 AD3d at 164; cf. People v Desjardins, 196 AD3d at 1178; People v Rodas, 145 AD3d at 1453). In fact, this is a "circumstance[ ] where impeachment evidence . . . remain[ed] material and exculpatory — and thereby warrant[ed] disclosure — even [though] the People attempted to avoid its disclosure by not calling the [caseworker] to testify" (People v Hagaman, 139 AD3d 1183, 1185 [3d Dept 2016] [internal quotation marks, brackets, ellipsis and citation omitted], lv denied 28 NY3d 930 [2016]). Finally, under the third prong, prejudice arose because the caseworker notes were material. Initially, it must be noted that there may be many reasons for a victim to appear as usual while undergoing abuse and following disclosure (see generally People v Cuadrado, 227 AD3d 1174, 1181 [3d Dept 2024], lv denied 42 NY3d 969 [2024]). Nevertheless, under the "less demanding standard" applicable here, we cannot say [*6]that there was no reasonable possibility that the outcome of defendant's trial would not have been impacted had the victim's credibility been further called into question by examination into her demeanor prior to and following her disclosure, considering that the conviction rests upon her credibility (People v Rong He, 34 NY3d 956, 959 [2019]; see People v Lewis, 125 AD3d 1109, 1112 [3d Dept 2015]).
The People's provision of this material after the close of all proof deprived defendant of "a meaningful opportunity to use the allegedly exculpatory material to cross-examine the People's witnesses or as evidence during his case" (People v Tripp, 162 AD3d 691, 692 [2d Dept 2018], lv denied 32 NY3d 942 [2018]). Moreover, County Court's provision of an adverse inference charge did not adequately remedy this violation and, thus, a new trial is required (see People v Negron, 26 NY3d 262, 269 [2015]). Although an adverse inference charge is permissible "where a defendant, using reasonable diligence, has requested evidence reasonably likely to be material, and where that evidence has been destroyed by agents of the State" (People v Handy, 20 NY3d 663, 669 [2013]), the relevant materials here — the caseworker notes — were not destroyed.[FN5]
Based upon our determination that these reports constituted Brady material that should have been disclosed to defendant, we need not reach defendant's related contention that it also constituted Rosario material (see generally People v Fisher, 28 NY3d 717, 720 n [2017]). Similarly, his further contentions have been rendered academic by this determination.
Garry, P.J., Reynolds Fitzgerald, Fisher and McShan, JJ., concur.
ORDERED that the judgment is reversed, on the law, and matter remitted to the Supreme Court for a new trial.

Footnotes

Footnote 1: The victim testified inconsistently regarding when the abuse would have commenced. The victim initially testified that the first instance of defendant touching her inappropriately occurred "[a] few weeks" after defendant moved into the home on a full-time basis, which she stated was close in time to the birth of her younger sister in August 2017. However, during cross-examination and after clarification from County Court, the victim testified that the first incident occurred a few weeks after moving into the home, which she estimated to be in January or February 2017. Nevertheless, the victim affirmed that the abuse was continuing when she made her initial disclosure in May 2018. Therefore, even if the abuse commenced at the later date in August 2017, this is still more than the three-month statutory requirement (Penal Law § 130.80 [1]), and "the fact that [the victim's] testimony concerning the time frame in which defendant [commenced] his sexual contact with her was vague and contradictory at times does not render her testimony incredible as a matter of law" (People v Bassett, 55 AD3d 1434, 1436 [4th Dept 2008], lv denied 11 NY3d 922 [2009]).

Footnote 2: In the second controlled call, the victim asked defendant not to tell her mother of their conversation.

Footnote 3: The victim testified that she was born in 2006 and, during this interview in May 2018, defendant confirmed that he was 29 years old, thereby establishing the age requirements of Penal Law § 130.80 (1) (b).

Footnote 4: It appears from the record that County Court consistently intermingled Brady and Rosario principles; therefore, we caution trial courts to be clear in the distinction of these two disclosure requirements (see generally People v Fisher, 28 NY3d 717, 720 n [2017]).

Footnote 5: Defendant also asserts that the People's failure to provide a drawing made by the victim depicting the location of the abuse deprived him of a fair trial. The People do not dispute that Walter permitted the victim to retain this rendering after her interview, and thus, this material was, by extension, destroyed by agents of the police. As such, an adverse inference charge was appropriately provided as to that material.