People v Hansel (2021 NY Slip Op 07035)





People v Hansel


2021 NY Slip Op 07035


Decided on December 16, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:December 16, 2021

112134 112520
[*1]The People of the State of New York, Respondent,
v
Raymond A. Hansel, Appellant.

Calendar Date:October 14, 2021

Before:Garry, P.J., Egan Jr., Aarons, Reynolds Fitzgerald and Colangelo, JJ.

Aswad & Ingraham, LLP, Binghamton (Thomas A. Saitta of counsel), for appellant.
Michael A. Korchak, District Attorney, Binghamton (Rita M. Basile of counsel), for respondent.



Reynolds Fitzgerald, J.
Appeals (1) from a judgment of the County Court of Broome County (Cawley Jr., J.), rendered February 13, 2020, upon a verdict convicting defendant of the crimes of predatory sexual assault against a child and rape in the first degree (three counts), and (2) by permission, from an order of said court, entered September 2, 2020, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.
In 2016, the victim (born in 2002) came forward with allegations that defendant, who had been married to her mother, had sexually abused her over an approximately four-year period from 2010 to 2014. Defendant was charged in an indictment with one count of predatory sexual assault against a child and four counts of rape in the first degree. Following a jury trial, defendant was found guilty of predatory sexual assault against a child and three counts of rape in the first degree. County Court sentenced defendant to concurrent prison terms of 15 years to life upon the predatory sexual assault conviction and to 10 years, followed by 10 years of postrelease supervision, on each rape conviction. Following sentencing, defendant moved pursuant to CPL 440.10 to vacate the judgment of conviction upon the basis that new evidence had been discovered. County Court denied the motion without a hearing. Defendant appeals from the judgment of conviction and, by permission, from the order denying his postconviction motion.
Defendant contends that the verdict was against the weight of the evidence, arguing that the victim was either incredible as a matter of law or lacked credibility. "When conducting a weight of the evidence review, this Court must first determine whether, based on all the credible evidence, a different finding would not have been unreasonable and, if not, then weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Cummings, 188 AD3d 1449, 1450 [2020] [internal quotation marks and citations omitted], lv denied 36 NY3d 1096 [2021]). "When conducting this review, we consider the evidence in a neutral light and defer to the jury's credibility assessments" (People v Santana, 179 AD3d 1299, 1300 [2020] [internal quotation marks and citations omitted], lv denied 35 NY3d 973 [2020]). "Testimony is incredible as a matter of law if it is inherently unworthy of belief because it is manifestly untrue, physically impossible or contrary to human experience" (People v Watkins, 180 AD3d 1222, 1230 [2020] [internal quotation marks, brackets and citations omitted], lvs denied 35 NY3d 1026, 1030 [2020]).
As relevant here, "[a] person is guilty of predatory sexual assault against a child when, being [18] years old or more, he or she commits the crime of rape in the first degree, criminal sexual act in the first degree, aggravated sexual abuse in the [*2]first degree, or course of sexual conduct against a child in the first degree, as defined in [Penal Law article 130], and the victim is less than [13] years old" (Penal Law § 130.96). "A person is guilty of course of sexual conduct against a child in the first degree when, over a period of time not less than three months in duration[,] . . . he or she, being [18] years old or more, engages in two or more acts of sexual conduct, which include at least one act of sexual intercourse, oral sexual conduct, anal sexual conduct or aggravated sexual contact, with a child less than [13] years old" (Penal Law § 130.75 [1] [b]). "A person is guilty of rape in the first degree when he or she engages in sexual intercourse with another person . . . [w]ho is less than [13] years old and the actor is [18] years old or more" (Penal Law § 130.35 [4]).
The victim testified that defendant resided in their household from the time that she was seven years old until she was 12 years old. She stated that defendant began abusing her when she was eight, and that said abuse began with inappropriate kissing and graduated to include oral sexual conduct and vaginal penetration. According to the victim, such abuse occurred not only when the mother was absent from the residence, but while she was in the home either sleeping or ill. Although the victim did not recall every instance of abuse, she steadfastly maintained that, once it began, it was a daily occurrence until defendant and her mother ended their relationship and he moved out of the residence. After defendant moved out, the victim continued to visit him at his sister's residence. She contended that on one overnight visit, defendant had sexual relations with her. She also testified that on another occasion, when she was sick and stayed home from school, the mother asked defendant to care for the victim and he abused her. The victim explained that she had not disclosed the abuse earlier because she did not think anyone would believe her and feared that defendant would hurt her family, and because defendant advised her that her mother and he would go to jail. Her disclosure came after her mother discovered her having sexual conversations online and her mother told her that she was going to take her to a therapist. The victim explained that she wanted her mother to hear about the abuse from her rather than the therapist. On cross-examination, the victim admitted that she had fabricated accusations of physical abuse against her mother and brother, but denied that she had made accusations that her brother sexually abused her. She admitted that she had told a therapist that lying had become normal to her but avowed this was because she had to cover up the abuse.
The victim's mother testified to defendant's work schedule while they were together and that he was born in 1981. A family nurse practitioner testified that she conducted an examination of the victim and discovered a five-millimeter dissection in the [*3]victim's hymen, which was abnormal and consistent with sexual abuse. A licensed clinical social worker testified to typical behaviors of victims of child sexual abuse, including that delay in disclosure is normal, as is the inability of children to recall the specific dates of abuse.
Defendant testified and denied ever sexually abusing the victim. He further testified that his work schedule allowed him little time to be alone with the victim, and his work records indicate that he worked the day that the victim alleged she was abused while sick at home. Defendant's sister testified that, on the one occasion when the victim and her siblings spent the night at the sister's residence, she checked on the children and the victim was sleeping in a bedroom with her younger sister.
A contrary verdict would not have been unreasonable had the jury credited defendant's testimony. Although defendant asserts that the victim's account was unworthy of belief due to her contradictory and inconsistent statements, the delay in disclosure and her propensity for lying, "it is not uncommon for young children to be uncertain and even inconsistent in their trial testimony" (People v Werkheiser, 171 AD3d 1297, 1301 [2019] [internal quotation marks and citations omitted], lv denied 33 NY3d 1109 [2019]). Additionally, the inconsistencies did not render her testimony "inherently unbelievable or incredible as a matter of law" (People v Kelsey, 174 AD3d 962, 964 [2019] [internal quotation marks and citations omitted], lv denied 34 NY3d 982 [2019], cert denied ___ US ___, 141 S Ct 2607 [2021]). The victim's propensity for lying, along with her explanation for her delay in reporting the abuse, raised credibility issues for the jury to resolve (see People v Bieganowski, 104 AD3d 1276, 1277 [2013], lv denied 21 NY3d 1002 [2013]; People v Reynolds, 81 AD3d 1166, 1167 [2011], lv denied 16 NY3d 898 [2011]). Moreover, these issues "were explored at trial and did not dissuade the jury from crediting the victim's testimony" (People v Horton, 173 AD3d 1338, 1340 [2019], lv denied 34 NY3d 933 [2019]). "Thus, viewing the evidence in a neutral light and according deference to the jury's credibility determinations, we find the verdict as to these convictions to be in accord with the weight of the evidence" (People v Watkins, 180 AD3d at 1230 [citation omitted]; see People v Farnham, 136 AD3d 1215, 1217 [2016], lv denied 28 NY3d 929 [2016]).
Defendant next contends that County Court erred in allowing the victim's mother to testify regarding the frequency of her sexual relations with defendant. At trial, the mother testified that, although her sex life with defendant was abundant during the beginning of their relationship, it declined precipitously "towards the end of 2010." The victim testified that the abuse began when she was eight years old, or sometime around 2010,[FN1] and continued on a daily basis. County Court allowed the testimony as circumstantial evidence that defendant's [*4]sexual desires were being met elsewhere.
"[E]vidence is relevant if it tends to prove the existence or non-existence of a material fact, i.e., a fact directly at issue in the case" (People v Primo, 96 NY2d 351, 355 [2001]). "[C]ircumstantial evidence is direct evidence of a fact from which a person may reasonably infer the existence or non-existence of another fact" (People v Taylor, 196 AD3d 851, 854 [2021] [internal quotation marks, brackets and citations omitted], lvs denied 37 NY3d 1025, 1030 [2021]). "An inference is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that is known to exist" (United States v Pauling, 924 F3d 649, 656 [2d Cir 2019] [internal quotation marks and citations omitted]). Although we must accord deference to the inferences drawn by the jury, we accord no such deference to the jury's speculation (see id.). The issue here is that the "fact" testified to, the significant reduction in the frequency of the couple's sexual encounters, is not a fact from which the jury could reasonably infer the existence of a fact material to the charges against defendant, i.e., whether he sexually abused the victim. Rather, it allows the jury to impermissibly speculatethat the reason that defendant and the victim's mother had less frequent sex was because he replaced one sexual partner, the victim's mother, with another, the victim. Furthermore, "[i]t is axiomatic that evidence bearing on the sexual climate of a household is inadmissible where it does not tend to prove a material element of the crime charged and is introduced simply to demonstrate a predisposition to commit the subject offense" (People v Seaman, 239 AD2d 681, 681 [1997] [internal quotation marks omitted], appeal dismissed 91 NY2d 954 [1998]). Although such testimony may be admitted if it demonstrates the relationship between the parties or completes a sequence of events (see People v Mercado, 188 AD2d 941, 943 [1992]), the testimony in this case was not offered to prove a material element of the case, the relationship of the parties, nor was it an integral part of the sequence of events leading to the criminal conduct or delay in the disclosure. The People candidly admitted that the purpose of the testimony was to convince the jury that defendant, who the victim's mother testified had exhibited a vociferous sexual appetite, suddenly stopped having frequent sex with her and filled the void with the victim. As such, County Court erred in allowing the testimony.
We agree with defendant that said error was not harmless. "[U]nless the proof of the defendant's guilt . . . is overwhelming, there is no occasion for consideration of any doctrine of harmless error" (People v Crimmins, 36 NY2d 230, 241 [1975]. The evidence in this case was not overwhelming and, in fact, came down to a determination of the credibility of defendant (see People v Taylor, 196 AD3d at 855; People v Callahan, 186 [*5]AD3d 943, 946 [2020]). Accordingly, we reverse and remit for a new trial.
We address defendant's contention that County Court erred in allowing expert testimony regarding child sexual abuse accommodation syndrome as this issue may arise upon retrial. "It is well settled that an expert witness may testify about
. . . child sexual abuse accommodation syndrome . . . so long as he or she does not draw any comparison to the facts of the case" (People v Adams, 135 AD3d 1154, 1157 [2016] [citations omitted], lv denied 27 NY3d 990 [2016]). The expert testified that she did not meet the victim or any witness nor did she have any information regarding the facts of the case. Additionally, the expert did not proffer an opinion as to the victim's credibility or whether abuse occurred. Instead, the expert properly confined her testimony to educating the jury on the syndrome. Accordingly, the expert's testimony was proper (see People v Gooley, 156 AD3d 1231, 1233 [2017], lvs denied 31 NY3d 984, 985 [2018]; People v Gokey, 134 AD3d 1246, 1247 [2015], lv denied 27 NY3d 1069 [2016]). Defendant's remaining contentions, both on his direct appeal and on his appeal from the order denying his CPL article 440 motion, are rendered academic by our decision.
Garry, P.J., Egan Jr., Aarons and Colangelo, JJ., concur.
ORDERED that the judgment is reversed, on the law, and matter remitted to the County Court of Broome County for a new trial.
ORDERED that the appeal from the order is dismissed, as academic.



Footnotes

Footnote 1: The earliest date on the indictment is July 2010.