People v Cuadrado (2024 NY Slip Op 02559)

People v Cuadrado

2024 NY Slip Op 02559

Decided on May 9, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 9, 2024

110741
[*1]The People of the State of New York, Respondent,
v
Julio Cuadrado, Appellant.

Calendar Date:March 26, 2024

Before:Clark, J.P., Aarons, Reynolds Fitzgerald, McShan and Mackey, JJ.

Timothy S. Brennan, Albany, for appellant.
Robert M. Carney, District Attorney, Schenectady (Peter H. Willis of counsel), for respondent.

McShan, J.
Appeal from a judgment of the County Court of Schenectady County (Matthew J. Sypniewski, J.), rendered August 13, 2018, upon a verdict convicting defendant of the crimes of predatory sexual assault against a child (two counts) and sexual abuse in the first degree.
In September 2014, three underage victims — victim A (born in 1998), victim B (born in 2001), and victim C (born in 2002) — reported to authorities in Maine that defendant had sexually abused them while they previously resided together at various residences in Schenectady County between 2007 and 2012. The People eventually learned of these disclosures in April 2015 and, after interviewing the victims, declined to prosecute the matter at that time based upon, among other things, the victims' inability to provide sufficiently specific accounts of the time and place of the abuse. The People were subsequently alerted in June 2017 to a renewed investigation of the alleged abuse after the victims had relocated to the City of Schenectady, and, after a brief investigation, defendant was charged the following month by a five-count indictment, with two counts of predatory sexual assault against a child, two counts of course of sexual conduct against a child in the first degree and sexual abuse in the first degree.
Prior to trial, defendant moved to dismiss the indictment alleging that the People violated his due process rights by virtue of the excessive preindictment delay. After conducting a Singer hearing (see People v Singer, 44 NY2d 241 [1978]), County Court denied defendant's motion, finding, among other things, that the People had established a good faith reason for the delay in prosecution. On the eve of trial, defendant sought leave to renew his motion to dismiss, contending that he was prejudiced by the destruction of certain video recordings of the victims and their mother in March 2016, which was attributable to the People's delay in prosecution. County Court denied the motion and the matter proceeded to trial. At the conclusion of trial, two counts of course of sexual conduct against a child in the first degree were dismissed prior to submission of the case to the jury and defendant was thereafter convicted of all three of the remaining counts.
Defendant subsequently moved to set aside the verdict, asserting that a juror had been asleep for three to four minutes during trial testimony and that the jury continued to deliberate during periods when various jurors were utilizing the restroom attached to the deliberation room. County Court denied the motion and ultimately sentenced defendant, as a persistent violent felony offender, to three consecutive prison terms of 25 years to life. Defendant appeals.
We affirm. Defendant contends that the verdict is not supported by legally sufficient evidence based upon the People's purported failure to establish the necessary time frame underlying the charged criminal conduct. This limited basis for challenging the legal sufficiency of his convictions [*2]was preserved by defendant's motion for dismissal at the close of the People's case, as explicitly reserved, and the renewal of that motion at the close of defendant's proof (compare People v Odofin, 153 AD3d 972, 974 [3d Dept 2017]). Defendant further argues that the victims' inconsistent accounts of defendant's criminal conduct render the verdict against the weight of the evidence.[FN1] Specifically, defendant contends that the delayed disclosure and the substance of the victims' accounts suggest that the accusations against him were fabricated.
As it relates to victims A and B, "[a] person is guilty of predatory sexual assault against a child when, being [18] years old or more, he or she commits the crime of . . . course of sexual conduct against a child in the first degree . . . and the victim is less than [13] years old" (Penal Law § 130.96). "A person is guilty of course of sexual conduct against a child in the first degree when, over a period of time not less than three months in duration . . . he or she, being [18] years old or more, engages in two or more acts of sexual conduct, which include at least one act of sexual intercourse, oral sexual conduct, anal sexual conduct or aggravated sexual contact, with a child less than [13] years old" (Penal Law § 130.75 [1] [b]). As to victim C, "[a] person is guilty of sexual abuse in the first degree when he or she subjects another person to sexual contact . . . [w]hen the other person is less than [13] years old and the actor is [21] years old or older" (Penal Law § 130.65 [4]).[FN2]
We are satisfied that defendant's convictions are supported by legally sufficient evidence relative to the time frame of his criminal conduct.[FN3] At trial, each victim provided specific accounts of the discreet acts of sexual conduct that defendant engaged in and sufficiently identified the time frame of the abuse by connecting the sexual acts to the respective residence they occupied at the time of the abuse. Viewing the evidence in the light most favorable to the People, we find that such evidence was legally sufficient for a rational jury to find that defendant's sexually abusive conduct occurred over a period of time not less than three months in duration (see People v May, 188 AD3d 1309, 1309-1310 [3d Dept 2020], lv denied 36 NY3d 974 [2020]; People v Thornton, 141 AD3d 936, 937 [3d Dept 2016], lv denied 28 NY3d 1151 [2017]).
As to the weight of the evidence, a different verdict in this case would not have been unreasonable had the jury credited defendant's testimony or discredited the victims' accounts of defendant's abuse. Nevertheless, "weigh[ing] the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony," we find that the verdict is not contrary to the weight of the evidence (People v Ashe, 208 AD3d 1500, 1501 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 39 NY3d 961 [2022]; see People v Alger, 206 AD3d [*3]1049, 1050-1051 [3d Dept 2022], lv denied 38 NY3d 1148 [2022]; People v Shackelton, 177 AD3d 1163, 1165 [3d Dept 2019], lv denied 34 NY3d 1162 [2020]). Defendant directs his contentions at the credibility of the victims relative to the timing of their disclosures and their potential motives for fabricating the accounts of abuse, as well as the inherent difficulties in engaging in the charged conduct without being noticed based upon the layout of the various residences. In our view, the victims' motivations, and their delay in disclosing the abuse, were largely explained by their testimony that they feared defendant as well as the expert testimony explaining the various reasons why minor victims might delay the disclosure of abuse. Further, while there may have been inconsistencies between the specificity of the victims' initial disclosures in 2014 and 2015 and their subsequent testimony at trial, defendant's counsel, as part of a well-considered trial strategy, emphasized these deficiencies during cross-examination of the various witnesses called by the People as well as defendant's own testimony. Ultimately, "[t]hese issues may have rendered acquittal a reasonable possibility, but they were explored at trial and did not dissuade the jury from crediting" the victims' accounts, which provided adequate details of the nature and time frame of the sexual conduct that defendant engaged in, the manner in which defendant perpetrated the conduct to elude detection and the victims' respective ages at the time of such conduct (People v Wells, 224 AD3d 1155, 1158 [3d Dept 2024] [internal quotation marks and citations omitted]; see People v Starnes, 206 AD3d 1133, 1140 [3d Dept 2022], lv denied 38 NY3d 1153 [2022]; People v Garcia, 203 AD3d 1228, 1228-1229 [3d Dept 2022], lv denied 38 NY3d 1032 [2022]; People v May, 188 AD3d at 1310; People v Shackelton, 177 AD3d at 1165).[FN4] All told, defendant's arguments amount to disagreements with the jury's resolution on matters of credibility and, on that premise, we discern no reason to disturb that determination or otherwise conclude that the victims' accounts were "inherently unbelievable or incredible as a matter of law" (People v Karnes, 223 AD3d 1119, 1122 [3d Dept 2024] [internal quotation marks and citation omitted]; see People v Hansel, 200 AD3d 1327, 1330 [3d Dept 2021], lv denied 38 NY3d 927 [2022]; People v Delbrey, 179 AD3d 1292, 1294 [3d Dept 2020], lv denied 35 NY3d 969 [2020]).
Defendant next contends that County Court erred in denying his motion to dismiss based upon the nearly three-year delay in bringing charges against him. In addressing the merits of an assertion that there has been a denial of defendant's right to prompt prosecution, we must look to "(1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether or not there has been an extended period of pretrial incarceration; and (5) whether or not there is any indication that the defense has been [*4]impaired by reason of the delay" (People v Taranovich, 37 NY2d 442, 445 [1975]; accord People v Regan, 39 NY3d 459, 465 [2023]). A court's review of these factors is holistic, as no one factor is determinative of a prompt prosecution claim (see People v Regan, 39 NY3d at 465; People v Johnson, 39 NY3d 92, 96 [2022]; People v Wiggins, 31 NY3d 1, 10 [2018]). "[I]n the context of preindictment delay, . . . a determination made in good faith to defer commencement of the prosecution for further investigation or for other sufficient reasons will not deprive the defendant of due process of law even though the delay may cause some prejudice to the defense" (People v Regan, 39 NY3d at 465 [internal quotation marks, ellipsis and citation omitted]).
The victims disclosed defendant's abuse in September 2014, after relocating with their mother to Maine. In April 2015, the People became aware of the allegations of abuse and the assistant district attorney (hereinafter ADA) assigned to the matter at that time subsequently interviewed the victims in connection with their disclosure. According to the ADA, the victims' accounts lacked specificity and the information provided was insufficient to develop a timeline. More specifically, although the two eldest victims disclosed that they were sexually abused, they could not identify with any specificity the timing of such abuse or connect the acts with the specific residences where such abuse took place. The ADA met with the victims again in June 2015 and, although she had scheduled the matter to be presented to the grand jury that month, ultimately concluded that the People could not move forward with the prosecution on account of the continued lack of specificity in the victims' accounts. Subsequently, the People were made aware in June 2017 that the victims had provided another disclosure that was being investigated by the Schenectady Police Department. According to the ADA who ultimately tried the People's case, his assessment was that the victims' disclosure "contained far more concrete detail in the form of specific facts, specific allegations and also contained far more detail related to . . . the alleged incidents of rape and sodomy by [defendant] in comparison to what had been generated in Maine 2014 and Schenectady 2015."
Although we do not find the length of delay egregious, we agree, and the People concede, that the period of delay beginning from April 2015 up until June 2017 when they learned of the renewed investigation militates in defendant's favor (see People v Johnson, 39 NY3d at 97; People v Morris, 25 AD3d 915, 916 [3d Dept 2006], lv denied 6 NY3d 851 [2006]).[FN5] Nevertheless, the record reflects that the People's concerns relative to the victims' initial accounts and the lack of specificity were well founded and provided an adequate justification for the initial determination not to proceed with presentation to the grand jury in 2015. The insufficiency of proof in the original disclosures readily explains [*5]why the People were not actively investigating the matter between June 2015 and June 2017 and, to this end, we do not believe that they were obligated to periodically monitor whether the victims were demonstrating improved recollection sufficient enough to support an indictment. To the contrary, doing so could be viewed as an indication that the victims' accounts were influenced, particularly noting their ages during the relevant time frame. Accordingly, we find that "the inherently discretionary and subjective prosecutorial determination of what constituted sufficient evidence to successfully prosecute defendant justified the delay" (People v Mack, 209 AD3d 1114, 1116 [3d Dept 2022] [internal quotation marks and citation omitted], lv denied 39 NY3d 1112 [2023]; see People v Wagoner, 195 AD3d 1595, 1596 [4th Dept 2021], lv denied 37 NY3d 1030 [2021]).
Turning to the remaining factors, there is no dispute that the nature of the charges for which defendant was ultimately convicted are atrocious, which weighs against him. Further, defendant was not incarcerated pretrial, rendering that factor insignificant (see People v Regan, 39 NY3d at 471; People v Romeo, 12 NY3d 51, 58 [2009], cert denied 558 US 817 [2009]). As to whether defendant suffered any prejudice on account of the delay, in his motion to renew, defendant argued to County Court that certain video recordings of interviews taken in September 2014 with child advocates in Maine had been destroyed in 2016 based upon the lack of prosecution. However, it is evident from the record that the notes from said interviews were provided to defendant and the social worker who interviewed the victims in Maine was available to defendant as a witness. Further, defendant was provided with the recordings from interviews that occurred prior and subsequent to the recordings at issue. To that extent, defendant fails to articulate how the absence of such recordings precluded him from presenting the substance of the disclosures through the social worker's testimony or on cross-examination of the victims. Finally, there is little dispute that the victims' initial disclosures were not overly detailed and specific which, according to the People, rendered them insufficient to proceed with defendant's prosecution. Accordingly, even accepting that defendant suffered minimal prejudice owing to the unavailability of such recordings, our review of the entirety of the Taranovich factors convinces us that defendant's constitutional right to prompt prosecution was not infringed upon by the delay in prosecution and we consequently discern no error in County Court declining to dismiss the indictment (see People v Wiggins, 31 NY3d at 13; People v Singer, 44 NY2d at 254; People v Decker, 13 NY3d 12, 15-16 [2009]; People v Johnson, 211 AD3d 1633, 1634 [4th Dept 2022], lv denied 39 NY3d 1111 [2023]; People v Wagoner, 195 AD3d at 1596; compare People v Regan, 39 NY3d at 470; People v Staley, 41 NY2d 789, 792-793 [1977]; People v Montague[*6], 130 AD3d 1100, 1101-1102 [3d Dept 2015], lv denied 26 NY3d 1090 [2015]).
We are also unpersuaded by defendant's arguments that County Court erred in its various pretrial evidentiary rulings. Turning first to County Court's Molineux ruling, we discern no abuse of discretion. County Court permitted the People to introduce evidence of defendant's use of corporal punishment, an act of physical abuse against the mother and details of uncharged sexual acts against the children. Such evidence was properly admitted, as it "provide[d] necessary background" concerning the victims' fear of defendant and the manner in which they reported the abuse, and, with respect to the uncharged sexual acts, were "inextricably interwoven with the charged crimes" (People v Turner, 172 AD3d 1768, 1771-1772 [3d Dept 2019] [internal quotation marks and citations omitted], lv denied 34 NY3d 939 [2019]; see People v Doane, 212 AD3d 875, 880-881 [3d Dept 2023], lv denied 39 NY3d 1154 [2023]; People v LaDuke, 204 AD3d 1083, 1088 [3d Dept 2022], lv denied 38 NY3d 1072 [2022]). Moreover, following the various examples set forth by defendant, County Court provided an instruction on the first day of trial concerning the permissible uses for such evidence and provided a Molineux instruction in its jury charge, minimizing any resulting prejudice (see People v Kendricks, ___ AD3d ___, ___, 2024 NY Slip Op 01951, *5 [3d Dept 2024]; People v Lewis, 224 AD3d 1143, 1152 [3d Dept 2024]; People v Doane, 212 AD3d at 881; see also People v Harris, 203 AD3d 1320, 1328 [3d Dept 2022], lv denied 38 NY3d 1033 [2022]). As to County Court's Sandoval compromise, which permitted the People to utilize a single burglary conviction and ensuing parole violation, defendant's failure to object renders his challenge unpreserved (see People v Imes, ___ AD3d ___, ___, 2024 NY Slip Op 01838, *2 [3d Dept 2024]). Were we to determine otherwise, the significant difference between the offenses related to his prior convictions and the crimes at issue rendered the use of such evidence minimally prejudicial (see People v Stansberry, 224 AD3d 1089, 1092 [3d Dept 2024]; People v Alger, 206 AD3d at 1055).
We also find that County Court properly permitted the People to present an expert witness to aid the jury. "It is well settled that an expert witness may testify about child sexual abuse accommodation syndrome so long as he or she does not draw any comparison to the facts of the case" (People v Hansel, 200 AD3d at 1332 [internal quotation marks, ellipses and citations omitted]). "[S]uch testimony may be admitted to explain a victim's behavior that jurors might otherwise misunderstand or perceive as unusual, such as a child's failure to promptly report abuse" (People v Gooley, 156 AD3d 1231, 1233 [3d Dept 2017] [internal quotation marks and citations omitted], lv denied 31 NY3d 984 [2018]). During his testimony, the expert confirmed that he had not treated nor met any of the victims or defendant and had not reviewed any [*7]materials concerning the case prior to trial (see People v Gokey, 134 AD3d 1246, 1247 [3d Dept 2015], lv denied 27 NY3d 1069 [2016]). Further, we disagree with defendant's assertion that the People elicited testimony from the expert through specific hypotheticals of the abuse that occurred in this case (compare People v Williams, 20 NY3d 579, 584 [2013]). Rather, our review satisfies us that "the expert did not proffer an opinion as to the victim[s'] credibility or whether abuse occurred" and "properly confined [his] testimony to educating the jury on the syndrome" (People v Hansel, 200 AD3d at 1332; see People v Adams, 135 AD3d 1154, 1157 [3d Dept 2016], lv denied 27 NY3d 990 [2016]). All told, "[t]he victims' protracted delay in disclosing the abuse was a significant issue at trial; indeed, a main defense premise was that the delay indicated that the allegations were not true and, thus, the expert testimony was properly received" (People v Olson, 110 AD3d 1373, 1376 [3d Dept 2013], lv denied 23 NY3d 1023 [2014]).
We are also unpersuaded by defendant's contention that his conviction should be overturned due to juror misconduct. "At any time after rendition of a verdict of guilty and before sentence, the court may, upon motion of the defendant, set aside or modify the verdict or any part thereof upon the following grounds: . . . during the trial there occurred, out of the presence of the court, improper conduct by a juror . . . which may have affected a substantial right of the defendant and which was not known to the defendant prior to the rendition of the verdict" (CPL 330.30 [2]).[FN6]
As to defendant's argument that one of the jurors was grossly unqualified because he fell asleep during trial (see CPL 270.35 [1]), such conduct, supported solely by the affidavit of a fellow juror, occurred in County Court's presence and, therefore, cannot be addressed in the context of a motion pursuant to CPL 330.20 (2) based upon the plain language of the statute (compare People v Young, 160 AD3d 1206, 1209 n 1 [3d Dept 2018], lv denied 31 NY3d 1155 [2018]; People v Lancaster, 143 AD3d 1046, 1051 [3d Dept 2016], lv denied 28 NY3d 1147 [2017]; see also People v Johnson, 92 NY2d 976, 978 [1998]). Accordingly, the failure to seek relief during trial renders his contention unpreserved (see People v Young, 160 AD3d at 1209; People v Lancaster, 143 AD3d at 1051; People v Lunetta, 38 AD3d 1303, 1305 [4th Dept 2007], lv denied 8 NY3d 987 [2007]; People v Sanabria, 266 AD2d 41, 42 [1st Dept 1999], lv denied 94 NY2d 884 [2000]; People v Gonzalez, 247 AD2d 328, 329 [1st Dept 1998]; People v Fenderson, 203 AD2d 585, 586 [2d Dept 1994], lv denied 84 NY2d 825 [1994]). Were we to consider the merits of his contention, we discern no reason to disturb County Court's conclusion, based upon its own observation, that defendant's allegation was completely unsubstantiated (see People v Blond, 96 AD3d 1149, 1153 [3d Dept 2012], lv denied 19 NY3d 1101 [2012]; People v Moore, 242 AD2d [*8]882, 882 [4th Dept 1997], lv denied 91 NY2d 835 [1997]; People v McIntyre, 193 AD2d 626, 626 [2d Dept 1993], lv denied 82 NY2d 757 [1993]).[FN7]
As to the allegation that jurors were using the bathroom adjacent to the deliberation room, such momentary absences during deliberations do not constitute the type of violation that would necessitate a new trial (see People v Kelly, 16 NY3d 803, 804 [2011]; see also People v Wright, 35 AD3d 172, 172-173 [1st Dept 2006], lv denied 8 NY3d 928 [2007]; compare People v Cridelle, 112 AD3d 1141, 1147 [3d Dept 2013]). Defendant's final contention concerning a juror's statements in deliberations do not rise to the level of improper influence that would warrant setting aside the verdict. The juror's remark that she had observed people like defendant during her employment was not suggestive of any expertise "in examining and weighing the evidence" (People v Torres, 189 AD3d 898, 899 [2d Dept 2020]). Moreover, the juror's purported reference to defendant having been previously arrested was validated by the evidence of defendant's prior conviction, which was fleshed out during defendant's cross-examination, thus supporting County Court's conclusion that there was no impact on the jury's determination (see People v Edwards, 188 AD3d 1763, 1764-1765 [4th Dept 2020], lv denied 37 NY3d 955 [2021]; compare People v St. Louis, 20 AD3d 592, 595 [3d Dept 2005], lv denied 5 NY3d 856 [2005]). Altogether, defendant has not demonstrated any prejudice to a substantial right and, accordingly, we find that County Court properly denied defendant's motion to set aside the verdict (see People v Tubbs, 115 AD3d 1009, 1012-1013 [3d Dept 2014]).
Defendant's remaining arguments are unsupported by the record. We reject defendant's contention that he was deprived of the effective assistance of counsel based upon the failure to lodge various objections during the People's summation or the single example raised by defendant concerning counsel forgoing a hearsay objection. Our consideration of counsel's overall representation and his vigorous pursuit of a defense on behalf of his client satisfies us that he provided meaningful representation to defendant throughout the entirety of the proceedings (see People v Starnes, 206 AD3d at 1143; People v Garcia, 203 AD3d at 1231).[FN8] Finally, we decline defendant's invitation to modify his sentence in the interest of justice. Considering the nature of defendant's grotesque conduct, the lasting impact on the victims in this case and his complete lack of remorse, we find the imposed sentence neither harsh nor excessive (see People v Wells, 224 AD3d at 1164; People v Shackelton, 177 AD3d at 1166; see also People v Johnson, 225 AD3d 927, 936 [3d Dept 2024]; People v Arlt, 219 AD3d 986, 987 [3d Dept 2023], lv denied 40 NY3d 996 [2023]). Defendant's remaining contentions, to the extent not addressed herein, have been considered and found without merit.
Clark, J.P., Aarons, Reynolds Fitzgerald and Mackey, JJ., concur[*9].
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: To the extent defendant includes the "fail[ure] to establish the necessary specificity of the occurrences" as an argument directed at the legal sufficiency of the evidence supporting his convictions, that specific contention is unpreserved (see People v Hodge, 224 AD3d 1082, 1083 [3d Dept 2024]) and, in any event, parallels his weight of the evidence contentions, for which we "necessarily must ensure that the People proved each element of the crime[s] beyond a reasonable doubt" (People v Starnes, 206 AD3d 1133, 1135 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 38 NY3d 1153 [2022]).

Footnote 2: Pursuant to the applicable statutory language, " '[s]exual conduct' means sexual intercourse, oral sexual conduct, anal sexual conduct, aggravated sexual contact, or sexual contact" (Penal Law § 130.00 [10]). Further, " '[s]exual contact' means any touching of the sexual or other intimate parts of a person for the purpose of gratifying sexual desire of either party" including, as relevant here, "the touching of the victim by the actor, whether directly or through clothing, as well as the emission of ejaculate by the actor upon any part of the victim, clothed or unclothed" (Penal Law § 130.00 [3]).

Footnote 3: A conviction for sexual abuse in the first degree (see Penal Law § 130.65) bears no timing element, rendering defendant's challenge to the timeline of the abuse against victim C irrelevant to his legal sufficiency argument.

Footnote 4: There is no dispute, and it is clear from the evidence introduced at trial, that defendant was well over 21 years of age, and the victims were under the respective age, necessary to satisfy the statutory requirements for his convictions.

Footnote 5: We note that seven months of the delay from initial disclosure came prior to the People receiving notice and, accordingly, should not be considered when assessing the length of delay. Further, the month that elapsed after the allegations were again brought to the People's attention in June 2017 is inherently reasonable (see People v Regan, 39 NY3d at 470).

Footnote 6: The entirety of defendant's contention concerns matters outside the record and, as noted by County Court, is not properly the subject of a motion pursuant to CPL 330.30 (1).

Footnote 7: We note that the jury was read back the portions of testimony given during the time when the juror was allegedly sleeping.

Footnote 8: On this point, defendant's contention that the People engaged in prosecutorial misconduct during their summation is unpreserved on account of the failure to object at trial and, in any event, lacks merit. Specifically, the People's statements consisted of fair commentary on the evidence, and the comments concerning the import of the expert testimony were in response to defense counsel's criticisms, which assailed the expert's lack of knowledge on the case and generality of his opinions (see People v Adams, 135 AD3d at 1157; People v Jabaut, 111 AD3d 1140, 1146 [3d Dept 2013], lv denied 22 NY3d 1139 [2014]). Altogether, we discern no flagrant statements or pervasive misconduct on the part of the People that would justify reversal (see People v Johnson, 225 AD3d 927, 935 [3d Dept 2024]; People v Sevilla-Rosales, 206 AD3d 1247, 1250 [3d Dept 2022], lv denied 38 NY3d 1153 [2022]).