People v Swartz (2025 NY Slip Op 01015)

People v Swartz

2025 NY Slip Op 01015

Decided on February 20, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 20, 2025

113580
[*1]The People of the State of New York, Respondent,
v
Ronald Swartz, Appellant.

Calendar Date:January 15, 2025

Before:Egan Jr., J.P., Aarons, Fisher, McShan and Mackey, JJ.

Tina K. Sodhi, Alternate Public Defender, Albany (Steven M. Sharp of counsel), for appellant.
Lee C. Kindlon, District Attorney, Albany (Erin N. LaValley of counsel), for respondent.

Mackey, J.
Appeal from a judgment of the Supreme Court (Richard McNally Jr., J.), rendered June 2, 2022 in Albany County, upon a verdict convicting defendant of the crime of predatory sexual assault against a child (two counts).
In 2019, defendant was charged by indictment with two counts of predatory sexual assault against a child (see Penal Law § 130.96). The charges stemmed from an investigation into allegations that he had raped a female relative (hereinafter victim 1) (see Penal Law § 130.35 [1] [d]) in 2008 when she was 12 years old and, separately, had engaged in sexual conduct with another relative (hereinafter victim 2) on multiple occasions between 2010 and 2012 when that child was less than 11 years old (see Penal Law § 130.75 [1] [a]). County Court (Carter, J.) denied defendant's subsequent motion to sever the counts of the indictment for trial. Following a jury trial, defendant was convicted as charged, and was later sentenced by Supreme Court (McNally Jr., J.) to consecutive prison terms of 20 years to life on each count. Defendant appeals.
Defendant contends that the verdict is not supported by legally sufficient evidence and is against the weight of the evidence. "When assessing the legal sufficiency of a jury verdict, we view the facts in the light most favorable to the People and examine whether there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" (People v Watts, 215 AD3d 1170, 1171 [3d Dept 2023] [internal quotation marks and citations omitted]; see People v Wells, 224 AD3d 1155, 1158 [3d Dept 2024], lv denied 42 NY3d 941 [2024]). In contrast, "our assessment of defendant's challenge to the weight of the evidence requires that we confirm whether the People proved each element beyond a reasonable doubt, and we do so while considering the evidence in a neutral light with deference to the jury's resolutions on witness credibility" (People v Tenace, 229 AD3d 908, 909 [3d Dept 2024] [internal quotation marks and citations omitted]).
Relevant here, "[a] person is guilty of predatory sexual assault against a child when, being [18] years old or more, he or she commits the crime of rape in the first degree . . . or course of sexual conduct against a child in the first degree . . . and the victim is less than [13] years old" (Penal Law former § 130.96). As to victim 1, a person is guilty of rape in the first degree when "he or she engages in sexual intercourse with another person . . . [w]ho is less than [13] years old and the actor is [18] years old or more" (Penal Law § 130.35 [former (4)]). As to victim 2, "[a] person is guilty of course of sexual conduct against a child in the first degree when, over a period of time not less than three months in duration . . . he or she, being [18] years old or more, engages in two or more acts of sexual conduct, which include at least one act of sexual intercourse, oral sexual conduct, anal sexual [*2]conduct or aggravated sexual contact, with a child less than [13] years old" (Penal Law § 130.75 [1] [former (b)]).[FN1]
The evidence adduced at trial consisted primarily of the victims' testimonies. Although there were admittedly some discrepancies between the victims' testimonies and their prior statements to investigators and/or medical providers, their accounts remained largely consistent. Victim 1 testified that when she was 12 years old, she spent the night at defendant's home with her siblings. It was on this occasion that, according to victim 1, defendant digitally penetrated her vagina while she was dozing in the living room. After she startled awake, victim 1 hid from defendant and again fell asleep. She awoke suddenly in "excruciating pain" emanating from inside her "vaginal area" like she was "being ripped open." She recognized defendant, who was then on top of her, and as he pulled away from her, she saw his erect penis covered in blood.[FN2] On the issue of credibility, victim 1 explained that she delayed in reporting the abuse out of fear of being shunned by family. In openly acknowledging her mental health history, victim 1 testified that her diagnoses and related symptoms did not affect her ability to properly perceive or later recall the underlying events.
Victim 2 similarly testified that they had been left alone in defendant's care as a young child and that, initially, he exposed them to pornography.[FN3] Thereafter, over a time frame spanning more than three months, defendant repeatedly subjected victim 2 to oral sexual contact. Victim 2's mother testified that victim 2 would have been left alone in defendant's care at the relevant times. As to the propriety of the investigation into victim 2's allegations, Police Sergeant Derek Breslin testified that he conducted victim 2's initial interview and that proper protocols had been followed. Melissa Spagli, an investigator experienced with child forensic interviews, similarly testified that appropriate procedures were employed when she had questioned victim 2. In opposition, defendant presented the testimony of Jacqueline Bashkoff, a licensed psychologist specializing in forensic psychology, who explained the challenges to obtaining reliable information when interviewing children on allegations of sexual abuse and, to this end, the importance of adhering to certain protocols; of note, she testified that certain best practices were not followed here, such as the video recording of the interviews.
Initially, we find that defendant's convictions are supported by legally sufficient evidence. Victims 1 and 2 testified as to the discreet acts that defendant had engaged in and sufficiently identified the relevant time frames — the ages of the victims and defendant were uncontested. Viewing the evidence in the light most favorable to the People, we find that such evidence is legally sufficient for a rational jury to have found that defendant committed the crimes charged (see Penal Law §§ 130.35 [former [*3](4)]; 130.75 [1] [former (b)]; 130.96; People v Cuadrado, 227 AD3d 1174, 1176-1177 [3d Dept 2024], lv denied 42 NY3d 969 [2024]). As to the weight of the evidence, although a contrary result would not have been unreasonable given that the case rested upon the credibility of the victims, the jury was entitled to credit their testimonies, and nothing in the record indicates that the victims were incredible as a matter of law (see People v Hansel, 200 AD3d 1327, 1330 [3d Dept 2021], lv denied 38 NY3d 927 [2022]). Accordingly, and viewing the evidence in a neutral light, the verdict is not against the weight of the evidence (see People v Wells, 224 AD3d at 1158-1159; People v Hansel, 200 AD3d at 1330; People v Shackelton, 177 AD3d 1163, 1165-1166 [3d Dept 2019], lv denied 34 NY3d 1162 [2020]).
Nevertheless, we find merit in defendant's contention that he was deprived of a fair trial based upon the testimonies of Breslin and Spagli, who each offered their opinion as to victim 2's credibility. Accordingly, notwithstanding defendant's failure to properly preserve his claim, we exercise our discretion and reverse in the interest of justice (see CPL 470.15 [6] [a]; People v Caba, 66 AD3d 1121, 1123 [3d Dept 2009]). "It is always within the sole province of the jury to decide whether the testimony of any witness is truthful or not" (People v Ciaccio, 47 NY2d 431, 439 [1979]; see People v Pabon, 28 NY3d 147, 157 [2016]). As such, "to bolster the testimony of another witness . . . by explaining that his [or her] version of the events is more believable than the defendant's, the . . . testimony is equivalent to an opinion that the defendant is guilty, and the receipt of such testimony may not be condoned" (People v Ciaccio, 47 NY2d at 439; see People v Paperno, 54 NY2d 294, 300-301 [1981]). Here, Breslin testified that he "felt . . . [victim 2] was telling the truth." Spagli, in turn, agreed that the goal of reaching the truth "was done in this case" and further testified that she "felt [victim 2] was reliable throughout the course of the investigation." Supreme Court did not provide a curative instruction.
We are similarly persuaded by defendant's claim that he was improperly denied the opportunity to impeach victim 2 about an alleged prior inconsistent statement given in an unrelated Family Court matter, in which victim 2 reportedly denied ever having been molested by defendant. When defendant attempted to question victim 2 in this regard, Supreme Court instructed defense counsel to avoid that line of questioning because such would open a "rabbit hole" about the Family Court matter itself and it was not possible to craft a limiting instruction that would avoid prejudice to "both sides." Indeed, the admissibility of testimony collateral to the ultimate issue before the jury and bearing only on the credibility of the witness is entrusted to the sound discretion of the trial court (see People v Wilson, 100 AD3d 1045, 1047 [3d Dept 2012], lv denied 22 NY3d 998[*4][2013]). The impeachment testimony sought here, however, concerned the ultimate issue before the jury. Accordingly, we conclude that it was error to preclude defendant from exercizing his right to confront victim 2 about their prior statement; the court could have crafted limitations to prevent the disclosure of unduly prejudicial information upon such questioning (see People v Hanley, 5 NY3d 108, 114-115 [2005]; People v Williams, 47 AD2d 963, 963 [2d Dept 1975]; compare People v Mannix, 302 AD2d 297, 298 [1st Dept 2003], lv denied 100 NY2d 622 [2003]; see generally People v Robinson, 216 AD3d 1252, 1253 [3d Dept 2023]).
The People's case here hinged upon the jury's assessment of the victims' credibility. Accordingly, the cumulative effect of these two errors directly interfering with the jury's credibility determination as to victim 2 — whose testimony bolsters that of victim 1 — cannot be deemed harmless (see People v Pabon, 28 NY3d at 157; People v Caba, 66 AD3d at 1124; People v Jian Long Shi, 43 Misc 3d 91, 92-93 [App Term, 2d Dept, 9th & 10th Jud Dists 2014]; see generally People v Robinson, 216 AD3d 1252, 1255-1256 [3d Dept 2023]; People v Major, 154 AD2d 225, 226 [1st Dept 1989], lv denied 75 NY2d 815 [1990]; compare People v Kozlowski, 11 NY3d 223, 240 [2008], cert denied 556 US 1282 [2009]). We thus reverse and remit for a new trial.
In light of the need for a new trial, we address certain of defendant's remaining arguments. First, defendant contends that the People's statement of trial readiness and certificate of compliance were invalid because the People failed to comply with their discovery obligations under CPL article 245 and, thus, that the indictment should be dismissed upon speedy trial grounds. We disagree. Indeed, amendments to New York's discovery (see CPL art 245) and statutory speedy trial (see CPL 30.30) rules went into effect on January 1, 2020, and the old discovery rules (see CPL former art 240) were repealed. Pertinent here, CPL 30.30 requires that a prosecutor's notice of readiness for trial "be accompanied or preceded by a certification of good faith compliance with the disclosure requirements of [CPL] 245.20" (CPL 30.30 [5], as added by L 2019, ch 59, § 1, part KKK, § 1), and CPL 245.50 in turn provides that "the prosecution shall not be deemed ready for trial for purposes of [CPL 30.30] until it has filed a proper certificate" of compliance (CPL 245.50 [3], as added by L 2019, ch 59, § 1, part LLL, § 2). Nevertheless, the Court of Appeals has held that where the People had validly declared their trial readiness prior to January 1, 2020, they did not then revert to a state of unreadiness when the amendments came into effect such that they were required to file a certificate of compliance to regain their status and stop of the speedy trial clock (see People v King, 42 NY3d 424, 426 [2024]; see also People v Robbins, 206 AD3d 1069, 1071-1072 [3d Dept 2022], lv denied 39 NY3d 942 [2022]). Here, the People announced [*5]their readiness for trial on July 22, 2019, and the record does not indicate that their statement of readiness was invalid. Accordingly, they were not required to comply with the requirements under CPL article 245 to maintain their trial readiness status (see People v King, 42 NY3d at 428).[FN4] Upon review, the record similarly reflects that the People's later-filed certificate of compliance was not illusory (see CPL 245.20 [1]-[2]; 245.50 [1]; People v Bay, 41 NY3d 200, 211-212 [2023]).
We are further unpersuaded by defendant's argument that his requests for a fact-finding hearing pursuant to CPL 245.35 (4) were improperly denied. CPL 245.35 provides, in relevant part, that the trial court may, in its discretion, facilitate the resolution of discovery disputes by "[r]equiring other measures or proceedings designed to carry into effect the goals of" the discovery requirements under CPL article 245 (CPL 245.35 [4]). Defendant contends that a fact-finding hearing was necessary to explore the role of the assistant district attorney in victim 2's forensic interview, as such information was relevant to determining whether to move for her disqualification and to support his defense centered upon the propriety of the underlying investigation. Pertinent here, a motion seeking to disqualify a prosecutor because of his or her pretrial involvement with the case against the defendant based upon the "advocate-witness rule" will be granted upon a showing that the prosecutor " 'will be called as a witness for the People, to testify to a disputed material issue[,]' or where he or she will be called to testify for the defendant and such testimony will be adverse to the People" (People v Somerville, 249 AD2d 687, 690 [3d Dept 1998], lv denied 92 NY2d 931 [1998], quoting People v Paperno, 54 NY2d at 300).[FN5] In response to defendant's requests, the prosecutor repeatedly averred — in writing and on the record — that she had no information regarding victim 2's interview that was adverse to the People; she was not expected to testify at trial. Moreover, because the prosecutor had interviewed victim 2 with Spagli, who was set to testify, her own testimony would have been cumulative. Under these circumstances, we find no abuse of discretion in the denial of defendant's requests for a fact-finding hearing (see CPL 245.35 [4]; People v Wilhelm, 34 AD3d 40, 54 [3d Dept 2006]; People v Somerville, 249 AD2d at 690).
Next, we have reviewed the in camera documents challenged by defendant and conclude that County Court (Ackerman, J.) did not abuse its discretion in withholding the undisclosed and redacted materials (see People v McCray, 23 NY3d 193, 198 [2014]; People v Dirschberger, 230 AD3d 876, 878 [3d Dept 2024]; People v Sharlow, 217 AD3d 1120, 1123 [3d Dept 2023], lv denied 40 NY3d 1013 [2023]; People v Bowman, 139 AD3d 1251, 1254 [3d Dept 2016], lv denied 28 NY3d 927 [2016]).
Finally, upon remittal, we direct that the counts of the indictment be severed in the event that the [*6]case proceeds to trial (see CPL 200.20 [3] [a]; People v Shapiro, 50 NY2d 747, 757 [1980]; People v Daniels, 216 AD2d 639, 639-640 [3d Dept 1995]; see generally People v Mero, ___ NY3d ___, 2024 NY Slip Op 06385 [2024]). Defendant's remaining arguments, to the extent properly before us, have been rendered academic by the need for a new trial.
Egan Jr., J.P., Aarons, Fisher and McShan, JJ., concur.
ORDERED that the judgment is reversed, on the law and as a matter of discretion in the interest of justice, and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision.

Footnotes

Footnote 1: Although these statutes were amended effective September 1, 2024 (see L 2023, ch 777, §§ 5, 17, 52), the former versions of the statutes apply in this case.

Footnote 2: Victim 1 also testified about an earlier incident of sexual contact by defendant that had allegedly occurred when she was five years old, and her father similarly testified that he had been aware of that incident. However, as this incident was not related to charged crimes — in fact, it had occurred roughly seven years prior to the crime charged in count one of the indictment — Supreme Court instructed the jury that the testimony of victim 1 and her father in this regard could only be considered as to the issues of motive, intent, state of mind, absence of mistake or accident.

Footnote 3: At trial, victim 2 used the pronouns they/them.

Footnote 4: Although the People were subsequently found to not be ready for trial, such conclusion was based upon their failure to file a certificate of compliance.

Footnote 5: To the extent that defendant appears to rely upon the "unsworn witness" rule in his brief on appeal, we do not find this rule applicable to defendant's arguments on this issue. "This rule has no definitive contours, but generally stands for the proposition that the prosecutor may not inject his [or her] own credibility into the trial" (People v Paperno, 54 NY2d at 300). In applying this rule, convictions have been reversed "where the prosecutor, to the prejudice of the defendant, has expressed his [or her] personal belief on matters which may influence the jury, has argued his [or her] own credibility on summation, has vouched for the credibility of the People's witnesses, or has, by cross-examination, suggested the existence of facts not in evidence" (id. at 300-301 [internal citations omitted]).